**John M. ADAMS, et al., Plaintiffs,**

v.

**MADISON REALTY & DEVELOPMENT, INC., et al., Defendants.**

**Civ. A. No. 87–1279.**

United States District Court,
D. New Jersey.

Aug. 31, 1990.

As Amended Sept. 20, 1990.

Marcus Crahan, Jr., Crahan, Javelera, Ver Halen & Aull, Los Angeles, Cal., Kenneth N. Laptook, Kimmelman, Wolff & Samson, Roseland, N.J., for plaintiffs.

Richard E. Moot, Moot & Sprague, Buffalo, N.Y., Mark F. Hughes, Jr., Robinson, Wayne & Lasala, Newark, N.J., for defendant Resolution Trust Corp. as Receiver of

Empire of America Federal Sav. Bank and Resolution Trust Corp. as Conservator for Empire Federal Sav. Bank of America.

## OPINION

WOLIN, District Judge.

In this complicated securities litigation plaintiffs and defendant Empire of America Federal Savings Bank ("Empire") both moved for summary judgment. Before the motions were heard, the Office of Thrift Supervision ("OTS") appointed the Resolution Trust Corporation ("RTC") as Conservator for Empire. RTC was substituted for Empire as a party in the case and now asserts certain statutory rights and common law defenses to plaintiffs' summary judgment motion. The resolution of these motions requires the Court to examine the scope of 12 U.S.C. § 1823(e) [1] and the interaction of that statute with the *D'Oench, Duhme* doctrine. For the reasons that follow, the Court will grant summary judgment to defendant.

## I. BACKGROUND

This is a classic case of greed and opportunism. Seeking to shelter their income from the tax coffers of the Government, plaintiff investors purchased interests in Madison Partnerships ("the Partnership"), an entity created to acquire and operate residential real estate properties. In payment for the investments, each investor executed a promissory note ("the Madison notes") made payable to one of three originator banks: Tri–County Savings & Loan Association of New Jersey, Community Federal Savings & Loan Association of Connecticut, and First Northern Cooperative Bank of New Hampshire. After a series of transfers, the notes came into the possession of defendant Empire.[2]

The district court determined that Empire was a "holder in due course" under section 3–302(1) of the Uniform Commercial Code ("UCC") and entered summary judgment in favor of Empire on January 5, 1988. In reaching its conclusion, the court stated that the issue was a close one which justified certification under 28 U.S.C. § 1292(b). On appeal, the Third Circuit held that Empire was not entitled to the status of a holder in due course. Hence, plaintiffs were not precluded from asserting any defenses to enforcement of the Madison notes. The district court judgments were vacated and the matter remanded for further proceedings. For a complete factual and procedural history of this case, see *Adams v. Madison Realty & Development, Inc.*, 853 F.2d 163, 164 (3d Cir.1988).

The saga has continued and a brief description of the events subsequent to the Third Circuit's remand is now necessary.

On December 11, 1989 plaintiffs filed a new motion for partial summary judgment against Empire. Empire opposed plain-

---

**1.** Section 1823(e) of Title 12, as amended, provides,

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823(e) (1989).

**2.** Empire of America Federal Savings Bank was a mutual savings bank with its offices and principal place of business in Buffalo, New York ("Empire North"). A separate banking organization also named Empire of America Federal Savings Bank had its administrative headquarters in Fort Worth, Texas. It was a subsidiary of Empire North ("Empire South"). Pastwik Affidavit dated Dec. 10, 1986. "Both [banks] ... have now been merged into one corporation under that name here referred to as 'Empire'." Def. Mem. in Support of Cross-motion for Summary Judgment filed Jan. 16, 1990 at 4*.

tiffs' motion and filed its own motion for summary judgment on January 16, 1990. These motions were scheduled for oral argument on February 2, 1990. On January 24, 1990, however, the RTC was appointed as Conservator of Empire. Pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, ("FIRREA"), Section 11 of the Federal Deposit Insurance Act, 12 U.S.C.A. §§ 1821(d)(12)(A)(i), and 1441a(b)(4), RTC requested a 45 day stay of all court proceedings. In compliance with the mandatory language of 12 U.S.C. § 1821(d)(12)(B), the Court granted the request.

Subsequently, RTC was appointed Receiver for Empire on February 27, 1990. On that same day a new federal savings bank, Empire Federal Savings Bank of America ("New Empire") was chartered by the OTS to accept the assets and assume the liabilities of Empire. RTC was appointed as Conservator for the new bank. The next day, RTC as Receiver for Empire, entered into a Purchase and Assumption Agreement ("P & A") with New Empire. Under that agreement, New Empire acquired assets from Empire. Among the assets acquired were the Madison notes.

Near the end of the 45–day stay, RTC sought the Court's permission to submit a supplemental memorandum of law on RTC's power to enforce the notes. Specifically, RTC claimed that the federal common law doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and the provisions of FIRREA, primarily 12 U.S.C. § 1823(e), were now dispositive of the pending summary judgment motions. The Court granted permission and both sides submitted memoranda. RTC also sought leave to substitute parties and to amend the previously filed motion papers to include the new defenses. Both requests were granted. RTC as Receiver of Empire and RTC as Conservator for New Empire ("RTC/Empire/New Empire") have now been substituted for defendant Empire in this action.

The summary judgment motions filed before the insolvency of Empire were predicated upon principles of contract law and the UCC in accordance with the Third Circuit's opinion in *Adams*. In *Adams*, the Third Circuit stated, "[d]enying the bank holder in due course status does not necessarily relegate it to simple contract remedies, claiming payment as a mere assignee subject to the plaintiffs' fraud defenses." *Adams*, 853 F.2d at 169. The Court noted that Empire could "benefit from the Code's shelter provision" or alternatively, Empire as transferee could seek the unqualified indorsement of the transferor under U.C.C. § 3–201(3). *Id.* at 169–70. Once the Government declared Empire insolvent, however, new questions arose in regard to RTC's statutory and common law rights to enforce the Madison notes. RTC argues that the holder in due course protection stripped away from Empire by the *Adams* decision now covers RTC under the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). Accordingly, RTC argues that plaintiffs may no longer avoid payment on the Madison notes under the defense of fraudulent misrepresentation, as asserted in the complaint. In opposition, plaintiffs have raised a host of arguments, including: (1) New Empire and RTC are not holders of the notes and therefore cannot enforce them; (2) New Empire and RTC can never become holders in due course because they had knowledge of the fraudulent character of the notes; (3) FIRREA supplanted *D'Oench;* (4) neither *D'Oench* nor 12 U.S.C. § 1823(e) applies to this case; (5) RTC failed to meet its standard of proof; and (6) several notes are facially defective and therefore uncollectible. These issues, potentially dispositive of plaintiffs' claims against RTC/Empire/New Empire, were the focus of a hearing on April 9, 1990. After hearing from counsel, the Court took the matter under advisement and studied the voluminous submissions of the parties and the statutes in question.

## II. DISCUSSION

### A. *Standard of Review*

On motion for summary judgment, all inferences are to be drawn and doubts resolved in favor of the non-moving party. *Meyer v. Riegel Products Co.*, 720 F.2d

303, 307, n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The moving party bears the initial burden to "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This burden can be "discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the burden shifts to the nonmoving party to "show that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Because the critical focus of a summary judgment motion is on whether there is a need for trial, that is, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," the nonmoving party must produce evidence that would support a verdict in that party's favor. *Id.* Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* Accordingly, the adverse, non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted), and "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In the case at bar, RTC/Empire/New Empire contends that plaintiffs' claim of fraudulent inducement is not a defense against RTC's enforcement of the promissory notes. Unless plaintiffs raise a related triable issue of fact, defendant's motion for summary judgment will be granted.

## B. *Defendant's Motion for Summary Judgment*

RTC/Empire/New Empire argues that the common law doctrine established in *D'Oench, Duhme* and the provisions of 12 U.S.C. § 1823(e) preclude an obligor on a note from asserting a claim or defense against the Federal Deposit Insurance Corporation ("FDIC") that is based upon an undisclosed agreement or condition not reflected in the loan records of a depository's files. In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the United States Supreme Court held that a "secret agreement", that is, one not expressly reflected on the face of the loan document, is unenforceable against the FDIC. This doctrine has been codified at 12 U.S.C. § 1823(e). *FDIC v. Blue Rock Shopping Center,* 766 F.2d 744, 753 (3d Cir.1985) ("reasonable inference that a purpose of [§ 1823(e)] was to codify the rule of *D'Oench, Duhme"*). As amended, § 1823(e) now applies to RTC as well as FDIC. *See* 12 U.S.C.A. § 1441a(b)(4) (1989). Hence, that portion of § 1823(e) which governs any agreement that "tends to diminish or defeat the interest of the Corporation in any asset acquired by it . . . as receiver of any insured depository" institution now also protects RTC.

In a recent interpretation of § 1823(e), the Supreme Court held that fraudulent misrepresentations alleged to have induced the execution of a promissory note constituted an "agreement" that could not diminish the FDIC's interest in acquired assets unless the agreement satisfied each requirement in § 1823(e). *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The *Langley* Court referred to *D'Oench* as "the leading case applying that term [agreement] to FDIC-acquired notes" and said:

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

484 U.S. at 93, 108 S.Ct. at 402. *See also FSLIC v. Murray,* 853 F.2d 1251 (5th Cir.

1988) (barring defenses based on misrepresentations concerning debtor's investment); *FDIC v. Dixon*, 681 F.Supp. 408 (E.D.Mich. 1988) (barring defenses based on misrepresentations by promoters concerning loan obligation).

The *D'Oench, Duhme* doctrine and § 1823(e) were mandated by the necessity for accuracy in regulatory records. *First State Bank of Wayne County v. City and County Bank of Knox County*, 872 F.2d 707, 715 (6th Cir.1989). To fulfill its duty to pay the depositors of a failed bank, FDIC or RTC frequently purchases the assets of the failed bank and then attempts to collect on them or sell them in order to minimize the loss to the insurance fund. *Blue Rock*, 766 F.2d at 752. FDIC and RTC cannot carry out their duties if they cannot rely on the accuracy of the books and records of the failed bank. Records that did not reflect the true condition of the bank's affairs would defeat the governmental policy of assistance to failed banks. Thus, by ensuring the accuracy of a bank's records, the *D'Oench, Duhme* doctrine and § 1823(e) allow FDIC and RTC to evaluate a financial institution quickly, often overnight, and make decisions concerning the liquidation, merger or transfer of a failed institution.

Plaintiffs have claimed that they were induced to invest in various real estate partnerships and to execute the Madison notes by misrepresentations in regard to sales commissions, use of proceeds and expected rent, among other things. Adams Affidavit dated Nov. 15, 1989. In opposition, defendant declares that, "nowhere [is it] recorded on the loan instruments in question that such representations were made or that the truth of such representations was a condition to the performance of the plaintiffs' obligations to pay the note according to its terms, nor do the asserted defenses meet the other statutory requirements of Section 1823(e)." Def. Reply Mem., 7.

Initially, the Court finds that defendant has met its burden of raising at least one legally sufficient defense to bar plaintiffs' claim. RTC is protected under both the doctrine of *D'Oench, Duhme* and the provisions of FIRREA. Plaintiffs argue, *inter alia*, that FIRREA has supplanted the *D'Oench, Duhme* doctrine and that FIRREA provides no protection to New Empire or RTC. The Court will address each of plaintiffs' arguments in turn.

### 1. FIRREA did not supplant *D'Oench, Duhme*

■ Plaintiffs base their argument on *City of Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), in which the Supreme Court held that a federal court could not impose more stringent limitations, under federal common law, than those imposed by Congress in a federal statute. Plaintiffs claim that because FIRREA provides protections to FDIC and RTC, which were previously part of the *D'Oench, Duhme* doctrine, the Court should presume that FIRREA displaces *D'Oench, Duhme*.

This argument is unconvincing. Plaintiffs have provided no support for their argument from the legislative history of the FIRREA or from established caselaw and after independent research, the Court has found none. Indeed, the weight of authority is to the contrary. *See, e.g., Langley*, 484 U.S. at 93, 108 S.Ct. at 402 (where the Supreme Court looked to *D'Oench, Duhme*, to construe the term "agreement" in § 1823(e); "[w]e can safely assume that Congress did not mean 'agreement' in § 1823(e) to be interpreted so much more narrowly than its permissible meaning as to disserve the principle of the leading case ..."); *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989) (when construing § 1823(e) federal courts look to common law doctrine); *FDIC v. McClanahan*, 795 F.2d 512, 514, n. 1 (5th Cir.1986) ("there is no reason to suppose that Congress intended to forbid the rule of estoppel [in *D'Oench, Duhme*] from being applied when the FDIC sues as receiver of a failed bank"). Moreover, FIRREA is a reenactment of the former § 1823(e). Hence, the Court sees no reason to presume that the newest amendments reflect a sudden Congressional preemption of *D'Oench, Duhme*. *See* Historical and Statutory

Notes to § 1823, 1989 Amendments, Subsec. (e), 12 U.S.C.A. § 1823 (1989).

### 2. The *D'Oench, Duhme* doctrine and FIRREA apply to this action

#### a. *There was a secret agreement*

■ Plaintiffs deny the existence of an undisclosed agreement between the investors and any of the originating banks or between the investors and Empire. This assertion lacks factual basis. Throughout this litigation, plaintiffs have contended that they were induced to invest in the Partnership by representations concerning the investment. As a defense against the Madison notes, plaintiffs claim that they relied upon certain representations or warranties regarding the investment in signing the promissory notes. The truth of those representations was thus a condition to performance of their obligation to repay the loan. *Cf. Langley*, 484 U.S. at 91, 108 S.Ct. at 401 (citing to 1 A. Corbin, Contracts § 14, p. 31 (1963) ("[T]ruth [of the warranty] is a condition precedent to the duty of the other party")). Plaintiffs should have insured that the alleged misrepresentations were incorporated into the written loan documents if they intended to rely on them. As it was, the notes were made subject to the unwritten conditions and acquired without disclosure of those conditions. The Court rejects plaintiffs' denial of a secret agreement.

■ The Court similarly rejects plaintiffs attempt to disavow participation in a scheme to defraud a bank. As the Supreme Court stated in *Langley*, "one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities...." 484 U.S. at 93, 108 S.Ct. at 402. By failing to record the alleged misrepresentations, plaintiffs participated in an arrangement likely to mislead RTC. Lack of intent to deceive bank examiners is irrelevant under both *D'Oench, Duhme* and § 1823(e). *See* 12 U.S.C. § 1823(e); *D'Oench, Duhme*, 315 U.S. at 458–59, 62 S.Ct. at 680; *FDIC v.*

*Van Laanen*, 769 F.2d 666, 667 (10th Cir. 1985).

#### b. *Knowledge of federal bank examiners is irrelevant*

■ Plaintiffs asserts that "both governmental regulators and Empire [ ] had notice of the questionable validity of the subject Madison investor notes within a few days after Empire [ ] had purchased them." Pltf. Response to Letter Brief Filed by RTC at 10. Further, plaintiffs request the opportunity to conduct discovery concerning the specifics of the bank examiners' knowledge.

The Court in *Langley* expressly stated that the FDIC's knowledge of the misrepresentation "prior to its acquisition of the note is not relevant to whether § 1823(e) applies." *Langley*, 484 U.S. at 94, 108 S.Ct. at 402–03. In view of the clear language of the Supreme Court, the Court will deny plaintiffs' request for discovery as regards the bank examiners' knowledge.

#### c. *Harm and negligence are irrelevant*

■ Plaintiffs argue that no money was lost by the depositors of the originating banks and if Empire's depositors lose money it is due to Empire's negligence. These arguments are irrelevant and contrary to established law. Whether depositors of the originating banks suffered harm is immaterial to whether plaintiffs have a valid defense against enforcement of the notes by RTC/Empire/New Empire. Similarly, any alleged negligence of Empire with regard to the indorsements has no bearing on whether plaintiffs' fraudulent inducement defense is barred under *D'Oench, Duhme* or § 1823(e).

These arguments were rejected by the Supreme Court in *D'Oench, Duhme*. There, the Court observed that it is "the evil tendency of the acts to contravene the policy governing banking transactions which lies at the root of the rule." *D'Oench, Duhme*, 315 U.S. at 459, 62 S.Ct. at 680. A borrower whose acts do not reflect the true status of the arrangement between borrower and bank may not raise a defense arising out of that arrangement.

*Id.* at 460–61, 62 S.Ct. at 681. Accordingly, plaintiffs' arguments must fail.

### d. *§ 1823(e) applies to any secret agreement that could diminish a bank's assets*

■ Plaintiffs claim that § 1823(e) only applies to secret agreements between lenders and borrowers. This argument was expressly rejected by the Fifth Circuit in *Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 360–61 (5th Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). There, the Fifth Circuit noted that the language of § 1823(e) "makes no express exception for agreements initiated by a third party and the obligors." *Id.* Nor does this Court see any reason to engraft such an exception onto the statute. An exception like that would be contrary to the policy behind § 1823(e) because a secret agreement between an obligor and a third party regarding payment of a note is as nonreflective of the true condition of a bank's finances as one between the bank and the obligor. This broad reading of the term "agreement" is consonant with the Supreme Court's explanation of the term in *Langley*. Writing for the unanimous Court, Justice Scalia outlined an expansive definition of the term "agreement" within the meaning of § 1823(e). He stated that "[a] condition to payment ..., including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach." *Langley*, 484 U.S. at 96, 108 S.Ct. at 403. "[I]n an action brought by the FDIC in its corporate capacity for payment of a note, § 1823(e) bars the defense that the note was procured by fraud in the inducement even when the fraud did not take the form of an express promise." *Id.* at 90, 108 S.Ct. at 400. RTC has the same powers as FDIC in its corporate capacity; thus, the Court finds that *Langley* bars plaintiffs from asserting a fraudulent inducement defense against RTC.

### e. *Plaintiffs are not "innocent borrowers"*

■ Plaintiffs contend that the doctrine of *D'Oench, Duhme* does not apply where

the maker of the debt instrument is innocent. As the Court previously indicated, whether the debtors actually intended to deceive the bank examiners or anyone else is immaterial. The omission from the written loan agreement of any material term of the loan that would tend to diminish the original loan is inimical to the prophylactic purpose of *D'Oench, Duhme* and the general Congressional purpose of full and continuous disclosure evidenced in § 1823(e). *See Langley*, 484 U.S. at 91–93, 108 S.Ct. at 401–02; *Howell v. Continental Credit Corp.*, 655 F.2d 743, 746 (7th Cir.1981) (citing cases).

Moreover, plaintiffs' reliance upon *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974) is misplaced. In *Meo*, the defendant executed a promissory note to a bank to purchase the bank's common stock which would then be held as collateral for the loan. Unbeknown to defendant, instead of issuing common stock, the bank issued voting trust certificates. The bank became insolvent and FDIC instituted suit on the note. The Ninth Circuit granted judgment in favor of defendant since defendant was a completely innocent party with regard to the bank's wrongful action. *Id.* at 792–93.

*Meo* appears to be an isolated case. Other courts have applied the *D'Oench, Duhme* doctrine to bar defenses to the alleged fraud of bank officers because the debtor failed to ensure that the representations were expressed in the loan documents. *See, e.g., Langley*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); *FSLIC v. Murray*, 853 F.2d 1251 (5th Cir. 1988). The egregious facts in *Meo* partially explain the outcome of the case. As a subsequent Ninth Circuit decision explained, in *Meo* "there was no secret agreement whereby the assets of the bank would be overstated. There was simply a failure of consideration of which the promisor was unaware until after the bank was closed and the suit was filed by the FDIC." *FDIC v. First Nat'l Finance Co.*, 587 F.2d 1009, 1012 (9th Cir.1978). In this case, plaintiffs do not fall within the *Meo* "clearly innocent party" exception. These plaintiffs lent themselves to an arrangement whereby the banking authorities were like-

## 428

ly to be misled. Plaintiffs should have recorded the representations in the loan documents.

### f. The notes constitute an "interest" within D'Oench, Duhme and § 1823(e)

The notes at issue here are negotiable instruments. They contain a signed unconditional promise to pay a sum certain. *See* U.C.C. § 3–104. Whether the notes were properly negotiated merely affects Empire's status as a holder in due course under the UCC. That issue is not before the Court.

Nor does § 1823(e) require that FDIC or RTC have "holder" status before qualifying for its protections. By express language, § 1823(e) requires only that FDIC or RTC have purchased an asset. In this case, RTC as receiver for Empire acquired the Madison notes when it acquired Empire's assets. It cannot be said that the notes are worthless now because the indorsements were not attached. Simply because enforcement of promissory notes may be easier if the purchaser is a holder in due course, does not render worthless those notes held by someone without holder in due course status. Additionally, improper negotiation renders the notes voidable, not void. The Supreme Court indicated in *Langley* that voidable title is an interest within the meaning of § 1823(e). *Langley*, 484 U.S. at 94, 108 S.Ct. at 402. Even non-negotiable instruments are covered by § 1823(e). *FDIC v. P.L.M. Int'l, Inc.*, 834 F.2d 248, 254–55 (1st Cir.1987) (relying upon *FDIC v. Gulf Life Ins.*, 737 F.2d 1513 (11th Cir.1984)); *Chatham Ventures, Inc.*, 651 F.2d at 358.

### g. "Holder" status

Plaintiffs argue that the cases cited by RTC for the proposition that *D'Oench, Duhme* and § 1823(e) afford RTC and FDIC holder in due course status are inapposite to this action. The Court disagrees.

First, plaintiff complains that the Fifth Circuit's reading of *D'Oench, Duhme* as affording holder in due course status to FSLIC is not the law in this circuit. *FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.

1988). The Third Circuit has neither embraced nor disagreed with the holding of *Murray*. This Court has read *Murray* closely, and finds it a well reasoned decision. The rationale expressed therein for extending holder in due course status to FDIC, is equally applicable to RTC in the instant case. Were this Court to relieve the *Adams* investors of their obligation to repay the proceeds of the loans they received and invested, it "would create an unjustified windfall to the maker[s].... Any sums these [plaintiffs] are excused from repaying comes at the expense of either the failed institution's depositors, its other creditors, or the taxpayers." *Murray*, 853 F.2d at 1257. A contrary ruling would directly conflict with the purposes behind § 1823(e). One purpose, as this Court recognized previously, is to allow bank examiners to rely on a bank's records in evaluating the worth of the bank's assets, especially when deciding whether to liquidate a failed bank, or provide financing for purchase of its assets and assumption of its liabilities by another bank. *See* 12 U.S.C.A. §§ 1821(d) and 1823(c)(2), (c)(4)(A) (1989). Examiners "would be [un]able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Langley*, 484 U.S. at 92, 108 S.Ct. at 401. In essence, plaintiffs' complaint is not with *Murray*'s use of the holder in due course label, but with the fact that *Murray* derived its conclusion from precedent binding upon this Court, namely the Supreme Court's decision in *Langley*.

Second, plaintiffs also object to defendant's reliance upon *Chatham Ventures Inc. v. FDIC*, 651 F.2d at 358, and attempt to distinguish it from the case at bar. Plaintiffs are chasing windmills in typical "Man of La Mancha" fashion. The Fifth Circuit's decision in *Chatham Ventures*, although decided prior to *Langley*, is directly in line with that decision. As such, it is persuasive authority to the Court. Plaintiffs arguments are unavailing.

### h. RCT is the transferee

Plaintiffs argue that New Empire, not RTC is the transferee. This argument

is frivolous. RTC as Receiver of Empire took possession of Empire on February 28, 1990 and by operation of federal law, succeeded to "all rights, titles, powers and privileges" of Empire, including possession of the notes in question. 12 U.S.C.A. § 1821(d)(2)(A) (1989). As Receiver for Empire, RTC sold the notes to New Empire the same day. As Conservator for New Empire, RTC took possession of New Federal and acquired all rights, titles and interests, including the Madison notes the same day.

3. RTC and New Empire need not be "holders"

■ Plaintiffs contend that neither RTC nor the new bank, New Empire, are holders of the notes and therefore are without legal right to their enforcement. They also assert that the notes are rescindable upon a showing of fraud. In support of this argument, plaintiffs cite the *Adams* decision for the proposition that Empire is not a "holder" and assert that defendant is bound by the Court's determination pursuant to 12 U.S.C. § 1821(d)(13)(A).

This argument suffers from at least two fatal flaws. Section 1821(d)(13)(A) of Title 12 provides, in relevant part, that RTC "shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of [RTC] as conservator or receiver." First, the decision of the Third Circuit was neither final nor unappealable. Second, that decision specifically noted that Empire, although denied holder in due course status, could "benefit from the Code's shelter provision," see 853 F.2d at 169, or alternatively, Empire as transferee could seek the unqualified indorsement of the transferor under UCC § 3–201(3), *id.* at 170. The fact that Empire was not a holder has no bearing on the rights of RTC under § 1823(e) and *D'Oench, Duhme.*

The Court finds plaintiffs' reliance upon *Grubb v. FDIC,* 868 F.2d 1151 (10th Cir. 1989) misplaced. In *Grubb,* the Tenth Circuit held that the protections of the *D'Oench* doctrine and § 1823(e) were unavailable to the FDIC when a judgment declaring the promissory note void was entered before the bank was declared insolvent and placed under regulatory control. Because the district court judgment had been entered before the bank was placed into receivership, the court reasoned that the FDIC had not acquired an asset protectible under either *D'Oench* or § 1823(e).

*Grubb* is inapposite to the case at bar. The Madison notes were among the assets of Empire acquired by RTC as Receiver for Empire on February 28, 1990 and transferred to New Empire pursuant to the P & A agreement the same day. No judgment declaring the promissory notes void was entered prior to their acquisition by RTC.

■ Plaintiffs also argue that RTC and New Empire are not holders under the UCC and hence, are not the presumed owners of the Madison notes. Pltf. Response at 3. Because RTC and New Empire can never become holders, plaintiffs claim that the Madison notes are unenforceable and rescindable on the basis of fraud. The UCC is immaterial to the resolution of this motion. This action has been brought by RTC. Accordingly, the suit arises under the laws of the United States and the Court must apply federal law. *D'Oench, Duhme,* 315 U.S. at 455–56, 62 S.Ct. at 678; *Blue Rock,* 766 F.2d at 747. The Court must effectuate the federal policy expressed or implicit in FIRREA and may only consider state precedents "interstitially," where a federal answer has not been provided. *D'Oench, Duhme,* 315 U.S. at 471–75, 62 S.Ct. at 685–88; *Blue Rock,* 766 F.2d at 748. In this case, the federal statute is clear. RTC need not establish holder status under the UCC to benefit from the protection of § 1823(e). Furthermore, as the Court has stated previously, the misrepresentations alleged by plaintiffs constitute unrecorded conditions to payment of a note. Hence, they cannot be asserted as defenses. *Cf. Langley,* 484 U.S. at 96, 108 S.Ct. at 403.

4. RTC as Conservator of New Empire is protected by § 1823(e)

■ Plaintiffs concede that newly amended § 1823(e) protects RTC in its ca-

pacity as receiver. Pltf. Response at 21. They argue, however, that FIRREA does not shield RTC in its capacity as conservator. Plaintiffs rely on the fact that "receiver" is specifically mentioned in § 1823(e), whereas "conservator" is not.

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation....

Pub.L. No. 101–73, § 217, 103 Stat. 187, 254, 256 (1989). By its terms, § 1823(e) applies directly to this case. The protection of § 1823(e) is available to RTC for any asset it acquired "by purchase or as receiver." The Madison notes were acquired by RTC as receiver of Empire under § 1821 when RTC took possession of Empire on February 28, 1990.[3] The same day, RTC as receiver of Empire entered into a purchase agreement with New Empire whereby RTC, as conservator of New Empire, acquired all assets held by RTC as receiver. *See* Purchase and Assumption Agreement Between RTC as Receiver of Empire of America Federal Savings Bank and Empire Federal Savings Bank of America, Art. III, Exh. D, Affidavit of Timothy R. Harvey in Support of Motion to Substitute Parties. Hence, § 1823(e) applies to RTC with regard to the assets acquired as a matter of law by RTC as receiver of Empire and that were subsequently transferred to New Empire under the Purchase and Assumption Agreement.

### 5. New Empire is protected under FIRREA

██ Plaintiffs argue that although FIRREA provides "bridge banks" with the same protection against enforcement of secret agreements found in § 1823(e), no protections are afforded to a "bridge savings association." In support of their argu-

ment, plaintiffs refer to 12 U.S.C. § 1821(n) which allows for the creation of a national bank, referred to as a bridge bank. Among other powers, a bridge bank may, "purchase such assets ... of such insured bank or banks that is or are in default ... as the Corporation [including RTC] may, in its discretion, determine to be appropriate...." 12 U.S.C.A. § 1821(n)(1)(B)(iii) (1989). Section 1821(n) also provides bridge banks with protection identical to that provided in § 1823(e). 12 U.S.C.A. § 1821(n)(4)(I) (1989). There are no similar provisions for "bridge savings association," save that which allows RTC to create one:

> with respect to savings associations and by application to the Director of [OTS], organize a new Federal savings association to take over such assets or such liabilities as the Corporation [including RTC] may determine to be appropriate....

12 U.S.C.A. § 1821(d)(2)(F)(i) (1989).

Defendant argues that the protections that apply to "bridge banks" should also apply to "new savings associations." In support of its position, defendant cites to persuasive authority from the Sixth and Eighth Circuits. Independent research by the Court reveals further support for defendant's proposition. Courts faced with the question of protection for "new banks" or for private purchasers of securities from FDIC or RTC, have uniformly provided protection identical to that afforded FDIC and RTC under § 1823(e) and *D'Oench, Duhme.* The decisions have generally rested upon either or both of the following rationales: (1) the rights of a transferee under U.C.C. § 3–201(1); (2) policies that underlie § 1823(e) and the doctrine of *D'Oench, Duhme,* as well as the language of FIRREA. The Court finds sufficient reason to extend the protection of *D'Oench, Duhme* to "bridge savings associations."

---

**3.** Section 1821(d)(2)(A) provides:

The Corporation shall, as conservator or receiver, and by operation of law, succeed to—
(i) all rights, titles, powers, and privileges of the insured depository institution ... and the assets of the institution; and

(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.
12 U.S.C.A. § 1821(d)(2)(A) (1989).

A primary duty of both FDIC and RTC is to pay depositors of failed financial institutions. *See Blue Rock,* 766 F.2d at 752. As this Court noted previously, the preferred method of ensuring depositor payment is through the use of purchase and assumption agreements. *See FDIC v. Wood,* 758 F.2d 156, 160–61 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). *D'Oench, Duhme* and § 1823(e) both promote purchase and assumption transactions by offering "the purchaser" protection from secret agreements that may adversely affect its rights in the acquired instruments. *FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989). Extending *D'Oench, Duhme* to transferees of assets from RTC, therefore, provides RTC with greater opportunity to protect the failed institutions' assets. Moreover, if the protections enjoyed by RTC did not run with the notes in purchase and assumption transactions, the market for such notes would be drastically reduced. Any reduction in the market would negatively effect FDIC's and RTC's ability to protect the assets of failed institutions. Hence, the Court holds that New Empire is entitled under the *D'Oench, Duhme* doctrine to the same protections afforded RTC. *Cf. Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 380–81 (5th Cir. 1990) (extending *D'Oench, Duhme* to private purchaser of assets of a failed institution); *Bell & Murphy & Assocs. v. Interfirst Bank Gateway,* 894 F.2d 750, 754–55 (5th Cir.1990) (a pre-FIRREA case extending *D'Oench, Duhme* to a bridge bank authorized by FDIC to operate a failed bank); *Newhart,* 892 F.2d at 48–51 (court extended holder in due course status to a private party purchasing notes from FDIC).

6. **Defendant has met its burden of proof**

In an attempt to reargue their state law claims, plaintiffs raise several factual issues including: whether the unattached indorsements are the bona fide indorsements that were intended to be attached to the notes; whether Putnam, a prior transferor, acquired the notes for value; and whether the federal banking authorities "knew" of the purported fraudulent nature of the notes. These factual issues are immaterial to the resolution of this motion.

As the Court stated previously, knowledge by the banking authorities is irrelevant to the application of § 1823(e), as a matter of law. *Langley,* 484 U.S. at 93–95, 108 S.Ct. at 402–03. Equally irrelevant is a prior transferor's status. Once RTC acquires the notes, it is fully protected against plaintiffs' fraud allegations under *D'Oench, Duhme* and § 1823(e). With regard to the genuineness of the indorsements, the Court finds plaintiffs timing very curious. Although the indorsements were material to the prior summary judgment motion before the district court, subsequently certified to the Third Circuit, their genuineness was never challenged. As the Third Circuit noted, "[t]he [district] court observed that the makers of the notes in this case were not threatened with double liability because there 'is no reasonable basis to fear that there are other indorsees to the notes in question other than Empire.'" *Adams,* 853 F.2d at 165. Even if there was a factual issue as to the genuineness of the indorsements, which there is not, it is immaterial to RTC's ability to enforce the notes under the protection of *D'Oench, Duhme* and § 1823(e). Empire's acquisition of the notes is not in dispute. Nor is there a dispute over whether RTC acquired the notes. Moreover, the Court notes its distress at plaintiffs' attempt to raise an issue of fact with regard to notes not even subject to this motion, *e.g.,* those of Arthur, Elise and Steven Solender, Lee Miller, and Charles and Carolyn Harris.

Plaintiffs have failed to rebut defendant's showing. Nor have plaintiffs produced evidence to controvert the unqualified promises to pay contained in the Madison notes. In sum, the representations alleged by plaintiffs constitute an unwritten condition to payment of the notes and cannot be asserted here.

**432**

### III. CONCLUSION

Empire of America Federal Savings Bank acquired the Madison notes for $19.5 million dollars on March 5, 1985. On February 28, 1990, RTC as Receiver of Empire became the owner of the notes and on the same day sold them to New Empire under a Purchase and Assumption agreement. RTC as Conservator of New Empire took possession of New Empire and acquired all rights, title and interest to the notes on the same day. Despite plaintiffs' allegations of fraudulent inducement, RTC/Empire/New Empire is entitled to summary judgment with respect to liability on the notes pursuant to 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine and plaintiffs' motion for partial summary judgment against RTC/Empire/New Empire is denied.