RESOLUTION TRUST CORPORATION RECEIVER OF ACTION FEDERAL SAVINGS BANK, Plaintiff,

v.

Thomas J. WILSON; Teddy Menas, et al., Defendants/Third–Party Plaintiff,

v.

ACTION SAVINGS BANK SLA; Joseph M. Skowronski; Charles T. Gemmel, Esq.; Todd, Gemmel, Nugent & Fitzgerald, P.A.; Lawrence E. Mills, Managing Agent; Resolution Trust Corporation; Emanuel Solomon; George Elkins; Steve E. Brady; Joseph D'Orio; and Robert Turnbull, Third–Party Defendants.

Civ. No. 91–3184 (SSB).

United States District Court, D. New Jersey.

April 29, 1994.

---

Paul A. Mainardi, Brown & Connery, Westmont, NJ, for plaintiff Resolution Trust Corp.

Thomas P. Frascella, Avolio and Hanlon, P.C., Trenton, NJ, for defendant Thomas J. Wilson.

## OPINION

BROTMAN, District Judge:

Presently before the Court is the motion for summary judgment of plaintiff and third-party defendant Resolution Trust Corporation ("RTC"). For the reasons set forth below, the motion is granted.

### I. Facts and Procedural Background

In July 1986, Thomas Wilson and Teddy Menas entered into a partnership agreement to develop a single commercial lot in North-field, New Jersey. Wilson and Menas subsequently purchased a second adjoining lot in 1988, financed through a purchase mortgage for approximately $346,500 arranged by Menas through Action Savings and Loan ("Action S & L"). The purchase mortgage was secured by the property itself and signed by both parties.

According to Wilson, Action S & L officials told him that due to a temporary bookkeep-

ing problem, Menas could not borrow any more money from the bank. In the interim, they recommended that Wilson apply for a $350,000 loan in his name only, with Menas cosigning. They also assured Wilson that once the bookkeeping problem was resolved, the loan would be reissued in both partners' names.

The $350,000 was soon exhausted. Concerned over Menas' borrowing, Action officials convinced Wilson to consolidate the partnership's prior loans with an additional $400,000 loan, into a single $1.1 million loan in Wilson's name only. Action officials assured Wilson, both orally and in a letter dated February 23, 1990 from Joseph M. Skowronski, Executive Vice President of Action, that he would only be responsible for 50% of the loan (the "Skowronski letter").

Wilson alleges that Action S & L officials at this time knew and failed to disclose that (1) Menas had exceeded the $5 million dollar single borrower limits, placing Menas' other nonpartnership development projects at risk, and (2) that the construction loan amount exceeded the market value of the building.

Shortly thereafter, Action S & L and Menas' nonpartnership development projects both collapsed. On November 15, 1990, Action S & L was declared insolvent by the Office of Thrift Supervision, and Resolution Trust Corporation ("RTC") was appointed as receiver of the Failed Thrift. On that same date, a separate institution, Action Federal Savings Bank (the "New Thrift") was established and RTC was appointed as its conservator. A purchase and assumption agreement was entered into between the New Thrift and RTC as the receiver of the Failed Thrift. Pursuant to the terms of that agreement, certain assets of the Failed Thrift were transferred to the New Thrift including the Note and Mortgage. As a result, RTC as conservator of the New Thrift became the sole holder of the Note and Mortgage as of November 15, 1990.

On October 25, 1991, the New Thrift went into receivership and RTC was appointed as its receiver.

On July 22, 1991, RTC as receiver of the New Thrift filed a complaint in the United States District Court against Wilson, Menas, and others. The original complaint contained four counts. Counts one and two sought foreclosure of the Mortgage and possession of the mortgaged property. Counts three and four sought foreclosure of an assignment of leases and security interests in personal property, respectively.

Defaults as to the four counts of the complaint were entered as to Wilson and certain other defendants who failed to answer the complaint. On December 16, 1991, RTC filed an amended complaint, adding a fifth count which stated a claim for money judgment against Wilson on the Note.

On June 22, 1992, Wilson filed and served an answer to the second amended complaint, a counterclaim, and a third party complaint against a number of third party defendants. In his answer, Wilson raised the defense of fraud to RTC's claim for money damages. In his counterclaim and third party complaint, Wilson asserted New Jersey racketeering and tort claims.

On October 26, 1992, RTC moved to dismiss Wilson's counterclaim and third-party complaint against it as the receiver of the Failed Thrift, based on lack of subject matter jurisdiction. RTC alleged that Wilson filed his counterclaim and third party complaint prematurely, before the statutorily-mandated administrative claims process had expired. During the pendency of that motion, RTC moved on December 28, 1992 for summary judgment dismissing Wilson's counterclaim and third party complaint against RTC and for money damages as to Count V of the Amended Complaint. On September 30, 1993, this court dismissed Wilson's counterclaim and third-party complaint for lack of subject matter jurisdiction, with leave to refile, and denied RTC's motion for summary judgment without prejudice.

Wilson subsequently refiled his counterclaim and third-party complaint, and RTC renewed its motion for summary judgment.

## II.  Discussion

### A.  Summary Judgment Standard

The standard for granting summary judgment is a stringent one. A court may grant

summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. p. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may

grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

## B. *Count V of the Amended Complaint*

RTC seeks summary judgment as to Count V of the amended complaint for money damages. RTC argues that the fraud defenses raised by Wilson are barred by the *D'Oench Duhme* and holder in due course doctrines.

### 1. *D'Oench Duhme Doctrine*

Under the D'Oench Duhme doctrine, *see D'Oench Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and its statutory counterpart, 12 U.S.C. § 1823(e),[1]

> undocumented side agreements with a failed institution taken over by the FDIC are legally inadmissible to diminish or defeat the interests of the FDIC.... The policy rationale behind the doctrine and section 1823(e) is that regulators assessing a financial institution's safety and soundness will not be aware of a bank's oral undertakings.

*Central W. Rental Co. v. Horizon Leasing,* 967 F.2d 832, 841 (3d Cir.1992).

12 U.S.C. § 1823(e) provides that:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in *writing,*
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, *contemporaneously* with the acquisition of the asset by the depository institution,
>
> (3) was *approved by the board of directors* of the depository institution or *its loan*

1. Section 1823(e) of the Federal Deposit Insurance Corporation Act, as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), did not supplant the federal common law D'Oench Duhme doctrine. *See Adams v. Madison Realty & Dev., Inc.,* 746 F.Supp. 419, 425 (D.N.J.1990), *aff'd* 937 F.2d 845 (3d Cir.1991). Although the common law doctrine and statutory provision have similar purposes, the statute is "both more encompassing and more precise." *FDIC v. O'Neil,* 809 F.2d 350, 353 (7th Cir.1987). Section 1823(e), as amended, complements and strengthens the D'Oench Duhme doctrine by establishing express criteria that must be met before an agreement that would diminish or defeat the banking regulator's interest in any asset acquired by it can be valid.

*committee,* which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an *official record* of the depository institution.

12 U.S.C. § 1823(e) (emphasis added).

Both D'Oench Duhme and Section 1823(e) apply to "any interest that the FDIC or RTC might have in an asset," whether in their capacity as a corporation or a receiver. *Adams v. Madison Realty & Dev., Inc.,* 937 F.2d 845, 852, 854 (3d Cir.1991).

Wilson's fraud defenses hinge on whether the representations made by bank officials meet all four requirements of Section 1823(e). *See FDIC v. Wright,* 942 F.2d 1089, 1101 (7th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992) ("Failure to satisfy any of the requirements of Section 1823(e) is fatal to any agreement covered by that section.") This court finds that neither the letter nor any other representations allegedly made by Action S & L officials meet the requirements of Section 1823(e).

First, the Skowronski letter was not executed by *both* the Failed Thrift and Wilson contemporaneously with the Failed Thrift's acquisition of the Note as required by Section 1823(e)(2). *See FDIC v. Virginia Crossings Partnership,* 909 F.2d 306, 309 (8th Cir.1990) (holding Section 1823(e)(2) unsatisfied because "the memoranda, which were prepared by the Bank, were never executed by appellants"). Second, neither the letter nor its contents were ever approved by either the loan committee or the Board of Directors of the Failed Thrift, as required by Section 1823(e)(3). J. Skowronski Dep. at 84 (Feb. 17, 1992). Third, Wilson has failed to show that the letter or its contents were ever made part of an official record, as required by Section 1823(e)(4).

Moreover, any oral representations allegedly made by Action S & L officials, to the extent not incorporated in the Skowronski letter, fail to meet the same requirements of

Section 1823(e). In addition, they were not put in writing, as required by Section 1823(e)(1). It would thus appear that Section 1823(e) bars any defenses raised by Wilson on the basis of either the Skowronski letter or any oral representations.

### 2. *Fraud in the Factum Defense*

■ Nonetheless, Wilson argues that Action's misrepresentations amount to fraud in factum, implicitly recognized in *dictum* as an exception to Section 1823(e) by the Supreme Court in *Langley. See Langley v. FDIC,* 484 U.S. 86, 93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987). This argument fails for two reasons. First, although it is true that *Langley* indicated that a defense of fraud in factum may be allowed despite an obligor's inability to meet the requirements of Section 1823(e), in the absence of clear precedent, this court declines to recognize such an exception. *See, e.g., Capitol Bank & Trust Co. v. 604 Columbus Avenue Realty Trust,* 968 F.2d 1332, 1346–47 (1st Cir.1992) (implicitly recognizing a fraud in factum defense); *FSLIC v. Gordy,* 928 F.2d 1558, 1565 (11th Cir.1991) ("assuming, *arguendo,* that fraud in the factum" exception exists); *McLemore v. Landry,* 898 F.2d 996, 1002 (5th Cir.1990) (citing *Templin v. Weisgram,* 867 F.2d 240, 242 (5th Cir.), *cert. denied,* 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989) ("[W]e are reluctant to create, on the basis of dictum, an exception to section 1823(e)."); *FDIC v. Virginia Crossings Partnership,* 909 F.2d at 311 (" '[F]raud in the factum' [is] a defense that falls outside the scope of § 1823(e)."); *FDIC v. Turner,* 869 F.2d 270, 276 (6th Cir.1989) (implicitly adopting a fraud in factum exception under *Langley* ).

■ Second, even assuming, *arguendo,* that such an exception exists, Wilson has failed to allege facts constituting fraud in factum, as distinguished from fraud in the inducement.[2]

Fraud in the inducement occurs when a party "is induced by either a fraudulent or a material misrepresentation by the other party" to enter into a contract, Restatement

---

**2.** Wilson raises both fraud defenses against the RTC. However, *Langley* explicitly held that fraud in the inducement does not constitute an

exception to Section 1823(e). *Langley,* 484 U.S. at 93–94, 108 S.Ct. at 402–03. Thus, this defense fails as a matter of law.

(Second) of Contracts § 164(1) (1981), "as when a seller misrepresents the quality of goods." E. Allan Farnsworth, Contracts § 4.10 at 250–51 (2d ed. 1990) (citations omitted) [hereinafter "Farnsworth"]. Fraud in the inducement does not constitute an exception to Section 1823(e). *Langley*, 484 U.S. at 93–94, 108 S.Ct. at 402–03.

In contrast, fraud in factum arises in a situation such as

> that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all.

Official Comment 7 to 3–305 of the Uniform Commercial Code.[3]

As noted by the Supreme Court, fraud in factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley*, 484 U.S. at 93, 108 S.Ct. at 402 (citations omitted). However, "[o]nly rarely ... is a misrepresentation seen as going to the very nature of the contract itself. Even the identity of the other party is not usually regarded as sufficiently central." Farnsworth at 250.

Wilson argues that Anchor officials committed fraud in factum by assuring him that he would be liable for only 50% of the consolidated $1.1 million loan.[4] Yet Action S & L officials never misconstrued the nature of the note or its contents. Wilson knew that he was signing a promissory note, and he knew the face value of the note at the time of execution.[5]

At most, Wilson's defense amounts to fraud in the inducement, which is not a valid exception to Section 1823(e) and the D'Oench Duhme doctrine. Accordingly, Wilson is liable to the RTC for money damages as to

---

3. The Restatement provides some scenarios where fraud in factum may be properly asserted. For example,

   > A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. It is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the belief that it is the one he has read.

   Restatement (Second) of Contracts, § 163 (2d ed. 1981) [hereinafter "Restatement of Contracts"]; *see also FDIC v. Turner*, 869 F.2d at 276 (finding fraud in factum where defendant signed, in the presence of a bank officer, a guaranty form that left the debtor's name and the guaranty amount blank. Without defendant's knowledge, a bank employee whited out the name of the bank printed on the form and inserted the name of another bank. The employee then filled in the name of a debtor other than the one intended.).

4. Wilson also maintains that Anchor S & L officials committed fraud by telling him that Menas' financial difficulties were short-term and easy to resolve, and by failing to disclose that Menas had exceeded his single borrower limit. These alleged misrepresentations clearly constitute fraud in the inducement, as neither misrepresentation pertained to the nature of the loan document or its terms. Furthermore, Wilson concedes that the failure to disclose that the construction loan amount exceeded the market value of the building constitutes only fraud in the inducement. *See* Pl.Opp.Br. at 5.

5. Even if doubt over the proper characterization of the S & L's misrepresentations remained, Wilson's own negligence precludes his successfully asserting a fraud in factum defense. *See Vernon v. RTC*, 907 F.2d 1101, 1107–08 n. 4 (11th Cir. 1990) ("[T]his Court has unearthed only three types of situations where an assertion of *D'Oench* failed to bar [a] defense, [one of which is where] the borrower is a nonnegligent victim of fraud in the factum.")

   Fraud in factum may only be established "[i]f the other party neither knows nor has reason to know of the character of the proposed agreement." Farnsworth, § 4.10 at 250–51 (citations omitted); *see also* Restatement of Contracts § 163 (Fraud in factum established only if the party asserting the defense "neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract" upon execution); *accord Bancredit, Inc. v. Bethea*, 68 N.J.Super. 62, 71, 172 A.2d 10 (1961) ("[O]ne who, though able to read, signs a negotiable instrument in reliance on false representations as to its character, is deemed negligent as a matter of law, thus precluding invocation of the defense of fraud in the *factum; a fortiori*, this would be so where ... the signer is aware of the negotiable quality of the note and is misled only as to certain of its details.")

   Wilson, as an experienced and literate businessman, was not entitled to rely on Skowronski's representations concerning the note. Wilson had a reasonable opportunity to learn of the terms of the note. Moreover, by his own admission, Wilson had actual knowledge that the note obligated him to pay its full face amount.

Count V of the Amended Complaint filed on behalf of Resolution Trust Corporation as Receiver of Action Federal Savings Bank.[6]

### C. *Wilson's Third–Party Complaint and Counterclaim*

#### 1. *The Tort Claims*

■ Wilson has asserted a counterclaim against RTC as conservator for the New Thrift and a third party complaint against RTC as receiver of the Failed Thrift. The counterclaim and third party complaint allege a hodgepodge of torts, including breach of duty of fair dealing and good faith, fraud, deception, misrepresentation, conspiracy, and gross negligence. The Skowronski letter and oral misrepresentations concerning the extent of Wilson's liability on the note are the crux of each of these tort claims. *See, e.g.,* Complaint at 24–25, 39, 42–44.

"Where the success of an asserted tort claim hinges on an agreement which does not satisfy the requirements of section 1823(e) . . . the claim must fail." *Tuxedo Beach Club Corp. v. City Fed. Sav. Bank,* 749 F.Supp. 635, 645 (D.N.J.1990). Thus, claims sounding in fraud are barred.[7] *See Adams v. Madison Realty & Dev., Inc.,* 937 F.2d at 858–59 (holding that plaintiff-obligor could not raise direct claims of fraud against the RTC under Section 1823(e) and D'Oench Duhme).

Section 1823(e) also neutralizes Wilson's claim that the Failed Thrift breached a duty of good faith and fair dealing. *See Oliver v. RTC,* 955 F.2d 583, 586 (8th Cir.1992) ("[T]o the extent that Oliver's breach of fiduciary duty claim is based on the asserted side agreements, the claim is barred by the *D'Oench* doctrine."); *Clay v. FDIC,* 934 F.2d 69, 70–71, 73 (5th Cir.1991) ("[B]ecause [defendants] cannot prove their claims [of breach of duty of good faith and fair dealing and negligence] on the face of documents available in the bank records, they cannot prove their cause of action without running afoul of *D'Oench Duhme.*") (footnote omit-

ted); *Mainland Sav. Ass'n v. Riverfront Assocs., Ltd.,* 872 F.2d 955, 956 (10th Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989) (barring setoff claim based on "intentional fraud, gross negligence, reckless conduct, breach of an agreement to fund, and breach of the implied covenant of contractual fair dealing"); *RTC v. Colorado 126 Partnership,* 746 F.Supp. 35, 37 (D.Colo. 1990) (barring defendant's setoff claim of "breach of covenant of good faith a fair dealing"); *FSLIC v. Locke,* 718 F.Supp. 573, 582 (W.D.Tex.1989) ("[T]he *D'Oench Duhme* doctrine prevents [defendant] from relying on the alleged oral representations and promises of officers of [the failed institution] to support his allegations of . . . breach of any duty of good faith and fair dealing.")

Wilson's claims of negligence and gross negligence are similarly unavailing. *See Clay,* 934 F.2d at 72–73 (barring negligence claim); *FDIC v. Kasal,* 913 F.2d 487, 489, 493 (8th Cir.1990), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991) (barring counterclaim for, *inter alia,* negligence); *Mainland Sav. Ass'n,* 872 F.2d at 956 (barring negligence claim).

Nor does Wilson's civil conspiracy claim escape the reach of D'Oench Duhme and Section 1823(e). Under New Jersey law, "the gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action." *Lopez v. Sawyer,* 62 N.J. 267, 276, 300 A.2d 563 (1973) (quoting *Board of Educ., Asbury Park v. Hoek,* 38 N.J. 213, 238, 183 A.2d 633 (1962)); *see also Tynan v. General Motors Corp.,* 248 N.J.Super. 654, 668–69, 591 A.2d 1024 (1991). The only underlying wrong alleged by Wilson is fraud, a claim which this court has held to be barred under D'Oench Duhme and Section 1823(e).

Moreover, a civil conspiracy claim inherently contravenes the policy and language of D'Oench Duhme and Section 1823(e). To

---

6. Because the court finds for RTC under the D'Oench Duhme doctrine and Section 1823(e), the court need not address whether the holder in due course doctrine applies.

7. Although no court has ruled specifically on the validity of misappropriation, and deception claims, applying the precedent set forth *supra,* the court finds that these claims are also extinguished by Section 1823(e).

prove a conspiracy, a claimant must show "an *agreement,* manifesting itself either in words or deeds, by which two or more persons confederate to do an unlawful act, or to use unlawful means to achieve a lawful result." *Hill Dredging Corp. v. Risley,* 18 N.J. 501, 541, 114 A.2d 697 (1955) (emphasis added). However, as this court has already held, the agreement at hand does not meet the requirements of Section 1823(e). *Accord Dahlstrom v. FDIC,* 963 F.2d 382 (10th Cir. 1992) (Table, Text in WESTLAW) (plaintiffs state common law claims of, *inter alia,* conspiracy, held barred under D'Oench Duhme and Section 1823(e)); *Alarcon v. Williams,* 772 F.Supp. 334, 341–42 (E.D.Mich.1991) (E.D.Mich.1991) (claims of "fraud conspiracy" held barred under D'Oench Duhme and Section 1823(e)).

### 2. The New Jersey RICO Claim

■ Wilson's remaining claim under the New Jersey Racketeering Act N.J.S.A. § 2C:41–1, *et seq.* ("NJ RICO") is also invalidated by Section 1823 and the D'Oench Duhme Doctrine.

No New Jersey cases have addressed the viability of NJ RICO against D'Oench Duhme. However, because NJ RICO borrows its structure, purpose and remedies from federal RICO, 18 U.S.C. § 1964 *et seq.,* the court will turn to federal case law for guidance. *See Matter of Liquidation of Integrity Ins. Co.,* 245 N.J.Super. 133, 135, 584 A.2d 286 (Law Div.1990).

Courts considering RICO claims based on agreements which are invalid under D'Oench Duhme have uniformly held that such claims are barred when asserted against a government receiver of a failed depository institution. *See Vernon v. RTC,* 907 F.2d 1101, 1107 (11th Cir.1990) (D'Oench Duhme and Section 1823(e) protect entities which have acquired assets of failed banks from claims by debtors based on RICO and state racketeering acts); *First City Nat'l Bank v. FDIC,* 730 F.Supp. 501, 511 (E.D.N.Y.1990) (dismissing RICO claim under D'Oench Duhme and because due to the penal nature of RICO's treble damages feature, " '[i]t would be plainly unjust to permit such an award against the receiver for innocent depositors and creditors alone would be pun-

ished, not the putative wrongdoer.' ") (quoting *Summers v. FDIC,* 592 F.Supp. 1240, 1243 (W.D.Okla.1984)); *Mery v. Universal Sav. Ass'n,* 737 F.Supp. 1000, 1005 (S.D.Tex. 1990) ("Plaintiff's RICO claims also derive from an oral side agreement and are barred by D'Oench and its progeny."); *see also Tuxedo Beach Club Corp. v. City Fed. Sav. Bank,* 749 F.Supp. at 646 ("In these cases, [including a RICO claim by obligor on note] section 1821(d)(9)(A) bars all claims which are based on, or substantially comprised of, a 'side agreement' which does not satisfy the requirements of section 1823(e)."). Accordingly, because the agreement which forms the core of Wilson's NJ RICO claim is barred by D'Oench and Section 1823(e), Wilson's NJ RICO claim is barred as a matter of law.

### III. Conclusion

Plaintiff and Third–Party defendant RTC is entitled to summary judgment dismissing the counterclaim and third party complaint of defendant Thomas J. Wilson and for money damages as to Count V of the Amended Complaint.

### ORDER GRANTING SUMMARY JUDGMENT DISMISSING THE COUNTERCLAIM AND THIRD PARTY COMPLAINT OF DEFENDANT, AND FOR MONEY DAMAGES AS TO COUNT V OF THE AMENDED COMPLAINT OF THE RTC

This matter having come before the Court on the motion of plaintiff and third-party defendant Resolution Trust Corporation for summary judgment;

Having considered the submissions of the parties;

For the reasons set forth in the Court's opinion of this date;

**IT IS** on this 28th day of April, 1994 hereby **ORDERED** that RTC's motion for summary judgment dismissing the counterclaim and third-party complaint of defendant Thomas J. Wilson against Resolution Trust Corporation as receiver of Action Savings Bank, SLA is **GRANTED;**

It is further **ORDERED** that the motion for summary judgment for money damages as to Count V of the Amended Complaint filed on behalf of Resolution Trust Corporation as Receiver of Action Federal Savings Bank is **GRANTED,** with judgment entered as to Wilson's liability for the amount of the deficiency based upon the foreclosure judgment plus interest and attorneys fees minus the fair market value of the mortgaged property; and

It is further **ORDERED** that a hearing to determine the fair market value of the mortgaged property be held on the 15th day of July, 1994 at 9:30 a.m. in Courtroom No. 2.

No costs.