Larry E. ADAMS and Donna J. Adams, Plaintiffs,

v.

Gary WALKER, an individual and as an agent for Sylvia State Bank, Defendant.

ARLINGTON STATE BANK, a Kansas corporation, Defendant and Third–Party Plaintiff,

v.

Charles E. THORNHILL, et al., Third–Party Defendants.

TURON STATE BANK, a Kansas Corporation, Defendant and Third–Party Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, corporation of the United States of America, Third–Party Defendant.

No. 90–1145–C.

United States District Court, D. Kansas.

June 20, 1991.

---

Richard T. Ballinger, and Stephen M. Joseph, Joseph, Robison and Anderson, Wichita, Kan., for plaintiffs.

B.J. Hickert and Susan G. Saidian, Morrison, Hecker, Curtis, Kuder & Parrish, Wichita, Kan., for FDIC.

Dell Marie Shanahan Swearer and J. Stanley Hill Branine, Chalfant & Hill, Hutchinson, Kan., for Arlington State Bank and Turon State Bank.

David L. Patton, Dodge City, Kan., for Charles E. Thornhill.

Gordon B. Stull, Pratt, Kan., for Alfred Zimmerman and Douglas McEntarfer.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on a number of motions. Plaintiffs move to remand the case pursuant to 28 U.S.C. § 1447(c) and for attorney's fees. (Dk. 7). The Federal Deposit Insurance Corporation ("FDIC") moves to dismiss and/or strike the amended third-party petition of Turon State Bank (Dk. 15, 20, 21). Turon State Bank ("TSB") moves for summary judgment against the plaintiffs. (Dk. 39). Since oral argument would not materially assist the court in deciding the motions, this order is issued forthwith as the court's decision.

The history to this case, though involved, is worthy of some discussion. In January of 1987, plaintiffs allegedly entered into an oral agreement with the defendant Gary Walker ("Walker") to invest in Horizon Sales RV, Inc., a company which Walker owned, operated, or held a majority interest in. Plaintiffs guaranteed some notes of the company and Walker handled the company's daily business. Walker was also president of Sylvia State Bank. Walker allegedly used his position with this Bank to obtain loans for the plaintiffs that were used then by plaintiffs to invest in Walker's company. Plaintiffs allege Walker fraudulently misrepresented to them the condition of his company in order to induce them to invest in his company through the loans and guarantees.

On September 8, 1988, the Kansas Bank Commissioner appointed the FDIC as receiver for Sylvia State Bank.[1] On the same day, TSB purchased the assets and assumed the liabilities of Sylvia State Bank through a written agreement with FDIC as receiver. One of the assets purchased by TSB was the promissory note ("note") of the plaintiffs Larry E. Adams and Donna J. Adams.

In December of 1988, plaintiffs filed an action in Harvey County District Court of Kansas against, *inter alia*, TSB and FDIC as receiver to declare the note unenforceable. In January of 1989, TSB filed an action against Larry Adams in Reno County District Court of Kansas to collect on the note. This subsequent suit was transferred and consolidated with the plaintiff's suit pending in Harvey County District Court.

The plaintiffs' claim against the FDIC as receiver was dismissed with prejudice by

---

[1]. A recent decision of the First Circuit meaningfully summarizes the FDIC's workings when an insured bank fails:

> The FDIC has two separate roles. As receiver, the FDIC manages the assets of the failed bank on behalf of the bank's creditors and shareholders. In its corporate capacity, the FDIC is responsible for insuring the failed bank's deposits. Although there are many options available to the FDIC when a bank fails, these options generally fall within two categories of approaches, either liquidation or purchase and assumption. ....
>
> The preferred option when a bank fails, therefore, is the purchase and assumption option. Under this arrangement, the FDIC, in its capacity as receiver, sells the bank's healthy assets to the purchasing bank in exchange the purchasing bank's promise to pay the failed bank's depositors. In addition, as receiver, the FDIC sells the "bad" assets to itself acting in its corporate capacity. With the money it receives, the FDIC-re-

ceiver then pays the purchasing bank enough money to make up the difference between what it must pay to the failed bank's depositors, and what the purchasing bank was willing to pay for the good assets that it purchased. The FDIC acting in its corporate capacity then tries to collect on the bad assets to minimize the loss to the insurance fund. Generally, the purchase and assumption must be executed in great haste, often overnight.

*Timberland Design, Inc. v. First Service Bank for Savings,* 932 F.2d 46, 49 (1st Cir.1991) (Citations omitted). See *Federal Deposit Ins. Corp. v. Bank of Boulder,* 911 F.2d 1466, 1469–70 (10th Cir. 1990) (When tendered the appointment of receiver for a failed state bank, the FDIC is statutorily obligated to accept it and, therefore, cannot avoid acting in two capacities in the purchase and assumption option.), *cert. denied,* —— U.S. ——, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991).

agreed order filed March 5, 1990. The next day, TSB filed a cross-claim against the FDIC as receiver and a third-party petition against the FDIC as a corporation. In its cross-claim, TSB alleged that a part of the asset purchase agreement was that the FDIC receiver would repurchase the Larry Adams note if a court later determined the note was false or fraudulent as alleged by Adams. In its third-party petition, TSB alleged that the FDIC as a corporation agreed to indemnify TSB from any claim brought by Larry Adams.

On March 14, 1990, in the United States District Court for the District of Kansas, the FDIC as a corporation filed its notice of removal pursuant to 12 U.S.C. § 1819(b)(2)(B).

## MOTION TO REMAND

■ Plaintiffs contend remand is necessary because removal jurisdiction is derivative in nature and the FDIC as a corporation was never a proper party in the state court action. In particular, TSB never sought leave of the state court, as required by K.S.A. 60–214, before filing its third-party petition against the FDIC. In addition, TSB's claim against the FDIC as a corporation is not one for indemnity as the plaintiff is seeking to have the note found unenforceable and TSB is seeking to collect on the note from the FDIC in the event it is found unenforceable. Plaintiffs' arguments and authorities fall short of their mark.

Removal jurisdiction over suits involving the FDIC is expansively provided at 12 U.S.C. § 1819(b)(2)(B), which reads in pertinent part: "Except as provided in subparagraph (D), the Corporation may, without bond or security, remove *any action, suit, or proceeding from a State court* to the appropriate United States district court." (emphasis supplied). See *Triland Holdings & Co. v. Sunbelt Service Corp.*, 884 F.2d 205, 207 (5th Cir.1989) (Federal courts lack removal jurisdiction only if the case comes within the three circumstances set forth in subparagraph (D)). This broad grant of subject matter jurisdiction "evidences 'Congress' desire that cases involving FDIC should generally be heard and decided by the federal courts." *Kirkbride*

*v. Continental Casualty Co.*, 933 F.2d 729, 731–32 (9th Cir.1991) (quoting *Federal Deposit Ins. Corp. v. Nichols*, 885 F.2d 633, 636 (9th Cir.1989)). The statute does not suggest in any meaningful way that removal jurisdiction is limited to those instances where the FDIC has been *properly* named a party in the state court action. See, e.g., *Structural Systems, Inc. v. Sulfaro*, 687 F.Supp. 22, 23 (D.Mass.1988) (Removal jurisdiction not defeated by the fact the FDIC has not yet formally been joined as a party to the suit).

The reasoning behind plaintiffs' motion goes like this. The state court never obtained jurisdiction over the FDIC as a corporation because it was never properly named a party to the suit. The principle of derivative jurisdiction underlying removal jurisdiction forecloses the possibility of federal court jurisdiction if the state court never had jurisdiction over the FDIC. Plaintiffs' reasoning is flawed. "[T]he derivative-jurisdiction principle only pertains to subject matter jurisdiction; a federal court can retain a removed case for new service if it determines that the state court lacked jurisdiction over the person of the defendant." 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722 at 290 (1985). See *Welsh v. Cunard Lines, Ltd*, 595 F.Supp. 844, 845–46 (D.Ariz.1984). Indeed, nothing prevents a federal court on a removed case from determining whether the removing party is a proper party to the suit under both procedural and substantive law. Based upon the expansive removal jurisdiction conferred by statute and the inapplicability of the derivative-jurisdiction principle, this court denies plaintiffs' motion to remand.

## MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

The FDIC in its capacity as receiver and corporation moves to dismiss the amended third-party petition. In support, the FDIC first argues that TSB will not suffer any damages since plaintiffs have no legal right to cancel the promissory note held by TSB. TSB seeks summary judgment against plaintiffs arguing their defenses are unavailable to them. In their respective mo-

tions, FDIC and TSB make the same contention that the plaintiffs' defenses of fraud and other agreements are barred by 12 U.S.C. § 1823(e) and the *D'Oench* doctrine. Due to this common argument, the court will address the motions simultaneously.

 In deciding a motion to dismiss, the court must accept as true on their face the well-pleaded factual allegations of the complaint, and all reasonable inferences are made in favor of the plaintiffs. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). Allegations must be construed most favorably for the plaintiffs. *Huxall v. First State Bank,* 842 F.2d 249, 251 (10th Cir. 1988). Dismissal is appropriate only if it appears beyond a reasonable doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The sufficiency of the complaint is not assessed from whether the plaintiffs may ultimately prevail but from whether plaintiffs are entitled to present evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989). In ruling on a rule 12(b)(6) motion, the court may not consider material beyond the pleadings unless it is submitted or attached as part of the complaint. *Hal Roach Studios v. Richard Feiner and Co.,* 883 F.2d 1429, 1441 n. 18 (9th Cir.1989).

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

 An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues. Where reasonable minds could ultimately reach different conclusions from the facts, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476–77 (10th Cir.1990).

The movant's initial burden under Fed.R. Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 345 (10th Cir. 1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon,* 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon,* 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

It is argued that plaintiffs' defenses are barred by the common-law *D'Oench* doctrine, the statutory codification of *D'Oench* at 12 U.S.C. § 1823(e), and the common-law federal holder in due course principles. Since the plaintiffs cannot clear even the first hurdle, the court will not address the alternatively asserted bars. The parties agree the question of law presented by the motions is: Assuming plaintiffs have evidence to support their defense of fraudulent inducement by misrepresentation or omission of material fact, is the defense barred by the common-law *D'Oench* doctrine? A number of issues underlie this question and will be identified in the following discussion.

The logical starting point is the case of *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The brokerage firm of D'Oench, Duhme executed a promissory note in favor of a bank to cover the bank's loss from bonds it had bought from the firm. A receipt given for the note showed the parties understood that the note would never be repaid. This receipt was not found in the bank's records. When the bank failed, the FDIC assumed the note and sued to recover upon it. D'Oench, Duhme defended that the parties agreed the note would not be repaid and that the note lacked consideration. The Supreme Court affirmed the lower court's judgment for the FDIC finding that defendant was estopped from asserting defenses based on this "secret agreement." *Id.* at 461, 62 S.Ct. at 681. The Court recognized that this common-law estoppel doctrine would further the strong "federal policy to protect respondent [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the bank which respondent [the FDIC] insures or to which it makes loans." *Id.* at 457, 62 S.Ct. at 679.

The *D'Oench* doctrine was ratified and supplemented by Congress in 1950 with the passage of the Federal Deposit Insurance Act. In its present form, this provision, 12 U.S.C. § 1823(e), reads in pertinent part:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said·board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

The reach of the doctrine and the statute is not coextensive. " '[T]he statute *expands D'Oench, Duhme* in that it applies to any agreement, whether or not it was "secret," and regardless of the maker's participation in a scheme. At the same time, however, the statute is *narrower* than *D'Oench, Duhme* in that it applies only to agreements, and not to other defenses the borrower might raise.' " *Resolution Trust Corp. v. Wellington Dev. Group,* 761 F.Supp. 731, 735 (D.Colo.1991) (quoting Note, *Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail,* 62 S.Cal.L.Rev. 253, 271–72 (1989)). Because the *D'Oench* doctrine is dispositive here, the court need not reach the issues surrounding the applicability of § 1823(e) to the case.[2]

Early on the *D'Oench* doctrine was strictly applied to cases with facts closely paralleling those in *D'Oench. Vernon v.*

---

**2.** Plaintiffs assert the 1988 version of 12 U.S.C. § 1823(e) is the one applicable here. Because

the provision only addressed the FDIC in its corporate capacity, plaintiffs argue it would not

*Resolution Trust Corp.*, 907 F.2d 1101, 1105 (11th Cir.1990). "[T]he doctrine has evolved to a rule that today is expansive and perhaps startling in its severity." *Bowen v. Federal Deposit Ins. Corp.*, 915 F.2d 1013, 1015 (5th Cir.1990). Implicitly, the Supreme Court recognized the expansion of the doctrine in a recent decision where it construed "agreement" as used in § 1823(e) to include any condition or circumstance when the maker of the note lends " 'himself to a *scheme or arrangement* whereby the banking authority ... was likely to be misled....' " *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 92–93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987) (quoting *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680) (emphasis in original). Such a broad definition serves an important purpose of § 1823(e), that is shared by the *D'Oench* doctrine, and which the Court explained as follows:

> One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, [citations omitted], and when the FDIC is deciding whether to liquidate a failed bank, [citation omitted], or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank, [citation omitted]. The last kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Gunter v. Hutcheson*, 674 F.2d [862] at 865 [11th Cir.1982]. Neither the

FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

484 U.S. at 91–92, 108 S.Ct. at 401. The policy considerations identified in *D'Oench* and restated in *Langley* have resulted in the doctrine's extension " 'well beyond [the] precise factual setting [found in *D'Oench* ].' " *Federal Sav. & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558, 1562 (11th Cir.1991) (quoting *Federal Deposit Ins. Corp. v. McCullough*, 911 F.2d 593, 600 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991)). The modern *D'Oench* rule estops a borrower from setting up a defense based on circumstances under which he has " 'lent himself to a scheme or arrangement whereby banking authorities are likely to be misled.' " *Bowen*, 915 F.2d at 1015 (quoting *Beighley v. Federal Deposit Ins. Corp.*, 868 F.2d 776, 784 (5th Cir.1989)). Plaintiffs here hope to evade the current reach of *D'Oench* on the basis of several factual distinctions. As will be seen, the distinctions have been raised before other courts and soundly rejected.

### Protection of Transferees

■ Plaintiffs first contend *D'Oench* protects only the FDIC and is unavailable to the FDIC's transferees, like TSB. In support, plaintiffs cite dicta from several district court cases. Circuit courts and district courts alike have allowed successors to assert the *D'Oench* bar. *Federal Sav. and Loan Ins. Corp. v. Cribbs*, 918 F.2d 557, 960 (5th Cir.1990) (Assignee of FSLIC entitled to same protections of *D'Oench*.); *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1106 (11th Cir.1990) (The

---

bar their defense as the FDIC acted in its receiver capacity when it transferred the plaintiffs' note to TSB. Plaintiffs' argument is well taken since the requirements of § 1823(e), as constituted in 1988, apparently only protected the FDIC in its corporate capacity. See *Bell & Murphy & Assoc. v. Interfirst Bank Gateway*, 894 F.2d 750, 753 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Federal Deposit Ins. Corp. v. Ackroyd*, No. 83–2470–O at 7, 1987 WL 109702 (D.Kan. March 6,

1987) (1987 U.S.Dist. Lexis 2581). The court, however, will reserve its ruling on this issue and the retroactivity of the 1989 amendments to 12 U.S.C. § 1823(e) for another case. At the same time, courts have consistently recognized the applicability of *D'Oench* when the FDIC or FSLIC was acting in its capacity as receiver. *Timberland Design, Inc. v. First Service Bank for Savings*, No. 932 F.2d 46, 49 (11th Cir.1991); *Federal Sav. & Loan Ins. Corp. v. Two Rivers Associates*, 880 F.2d 1267, 1276 (11th Cir.1989).

*D'Oench* doctrine has been held to protect entities which obtain assets through purchase and assumption agreements with the federal receiver.); *Bell & Murphy & Assoc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir.1990) ("[W]e agree with the FDIC that failure to extend *D'Oench, Duhme*'s protection to bridge banks would undermine the effectiveness of bridge banks as a means of continuing the normal banking operations, and thereby protecting the depositors and creditors, of a failed bank."); *Federal Deposit Ins. Corp. v. Newhart*, 892 F.2d 47, 49–50 (8th Cir.1989) (If *D'Oench's* protections did not flow to assignees, "there would be little or no incentive for prospective purchasers to acquire them [nonperforming loans] if they were subject to the personal defenses of the obligors based on undisclosed agreements." This would make purchase and assumptions more expensive and less desirable.); *Adams v. Madison Realty & Development, Inc.*, 746 F.Supp. 419, 430 (D.N.J. 1990) ("Courts faced with the question of protection for 'new banks' or for private purchasers of securities from FDIC or RTC, have uniformly provided protection identical to that afforded FDIC and RTC under § 1823(e) and *D'Oench, Duhme*."); *B.L. Nelson and Associates v. Sunbelt Sav.*, 733 F.Supp. 1106, 1111–12 (N.D.Tex. 1990) (Assignee of FSLIC enjoys same protected status that FSLIC has under *D'Oench*.) But see *Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151, 1159 (10th Cir.1989) ("By its very terms, however, the *D'Oench* rule only prevents parties from raising defenses against the FDIC.") The current trend is for the *D'Oench* doctrine to protect those third-party institutions that have been transferred assets from a federal receiver. The Tenth Circuit's statement in *Grubb* is basically dicta offered without any explanation or analysis of the other decisions. This court does not feel constrained to heed the dicta in *Grubb* and, instead, will fall in step with the current march to extend *D'Oench's* protection to third-party transferees, such as TSB.

The reasons for bringing assignees under the *D'Oench* umbrella are obvious and compelling. The Fifth Circuit has stated them persuasively:

> Purchase and assumption agreements are preferred because they minimize the corporations' losses, expand the purchasing institutions' opportunities at low risk, and protect depositors. D'Oench, Duhme promotes purchase and assumption transactions by offering the purchaser protection from secret agreements that tend to affect adversely its rights in the instruments that it acquires. Extending *D'Oench, Duhme* to transferees of assets from the FSLIC, therefore, provides the FSLIC with greater opportunity to protect the failed institutions' assets.
>
> . . . .
>
> ... If appellants could successfully assert, as part of an affirmative claim or as a defense, an oral side agreement that tends to diminish the value of an otherwise facially valid instrument acquired by Olney, purchasers would be discouraged from acquiring assets from the FSLIC in the future, and the FSLIC would find it more difficult to protect the assets of failed institutions.

*Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990) (citations omitted). See also *Adams v. Madison Realty & Development, Inc.*, 746 F.Supp. at 431 (Without the extended protections, the market for assets would diminish and thereby limit the federal receiver's ability to protect the failed bank's assets.) Since these policy reasons are little more than echoes of those first stated in *D'Oench* and *Langley*, this court believes the protection of assignees and transferees is consistent with the intent of the Supreme Court, as well as, Congress.

### Secret Agreement/Innocent Borrowers

■ Plaintiffs contend they did not lend themselves to any secret agreement but were mere victims of a fraudulent scheme perpetrated by the president of the Sylvia State Bank. Plaintiffs' argued distinction does not avoid the current expansive applications of the *D'Oench* doctrine.

The Supreme Court in *Langley* rejected an effort to read "agreement" in § 1823(e)

as encompassing only mutual, express promises of future acts. The Court found that "agreement" had a much broader meaning than promise and included such things as conditions to performance. 484 U.S. at 90–91, 108 S.Ct. at 400–401. The Court expressly held that if the truthfulness of a warranty was a condition to performance then it was part of an "agreement" covered under § 1823(e) and held by implication that it was also covered under the *D'Oench* doctrine. *Federal Sav. & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558, 1563 (11th Cir.1991).

In the instant case, plaintiffs contend Walker, acting within his authority as president of Sylvia State Bank, made certain fraudulent representations about the condition of Horizon RV and the collateral to be pledged by Horizon RV. Plaintiffs further contend they relied upon those representations in signing the promissory notes and in investing the borrowed money with Horizon RV. They claim and defend the note is voidable because of fraudulent inducement. In other words, the truthfulness of Walker's alleged representations was a condition to performance of their obligation to repay the note. Since this condition never appeared in the promissory note or bank records, plaintiffs are now saying the note is subject to unwritten conditions and was acquired by FDIC and TSB subject to these undisclosed conditions. Plaintiffs cannot successfully deny the existence of a secret agreement. See *Federal Sav. & Loan Ins. Corp. v. Gordy*, 928 F.2d at 1564; *Federal Deposit Ins. Corp. v. Hudson*, 758 F.Supp. 663, 671 (D.Kan.1991); *Adams*, 746 F.Supp. at 426.

■ There is no requirement of malfeasance, negligence or intent to deceive on the part of the borrower. *Timberland Design, Inc.*, 932 F.2d 46, 49; *Bowen*, 915 F.2d at 1016. The focus is not on whether the secret agreement was fraudulent or whether the borrower intended to deceive the banking authorities. Rather, the court is concerned with "whether the borrower 'lent himself to a scheme or arrangement' whereby those authorities were likely to be misled." *Bell & Murphy & Assoc. v. In-*

*terfirst Bank Gateway*, 894 F.2d at 754 (quoting *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 680). A borrower may evade the doctrine if he did not lend himself to the unrecorded scheme or arrangement. A borrower, however, lends himself to a scheme or arrangement by simply signing a promissory note which is subject to an unwritten and unrecorded condition for repayment "that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise . . . or of the truthfulness of a warranted fact." *Langley*, 484 U.S. at 93, 108 S.Ct. at 402; see also *Federal Deposit Ins. Corp. v. McCullough*, 911 F.2d at 600–01.

■ The *D'Oench* doctrine "favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." *Bell & Murphy & Assoc.*, 894 F.2d at 753. Consequently, the doctrine operates even when the only fault of the borrower was in not reducing the entire agreement to writing. *Timberland Design, Inc.*, 932 F.2d 46, 49; *Bell & Murphy & Assoc.*, 894 F.2d at 754. With some literary flair, the Fifth Circuit has discussed the rationale behind this seemingly harsh doctrine:

The lack of a malfeasance requirement makes *D'Oench, Duhme* a sharp sword and sturdy shield indeed. What is the purpose of such imposing armaments? Fundamentally, *D'Oench* attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books. The doctrine means that the government has no duty to compile oral histories of the bank's customers and loan officers. Nor must the FDIC retain linguists and cryptologists to tease out the meaning of facially-unencumbered notes. Spreadsheet experts need not be joined by historians, soothsayers, and spiritualists in a Lewis–Carroll-like search for a bank's unrecorded liabilities. . . .

The dangers of a contrary policy should be obvious. Today, stable financial institutions sometimes seem as elusive as the Snark. Unrecorded agree-

ments—those rooted in the loose soil of casual transactions as much as those that spring from the malodorous loam of outright fraud—are a threat to the ecology of the banking system that we can ill-afford. To check the growth of these hardy perennials, *D'Oench* forces borrowers to bear the risk that their unorthodox plants will bear no fruit. Those who till these soils may not shift the cost of their peculiar agronomy to the FDIC, the bank's depositors and unsecured creditors, and the taxpayers and depositors who fund the FDIC. (citations omitted).

... Adulterating *D'Oench, Duhme* would amount to abandoning a bedrock protection for the uncertainty of quick-clay,.... The firm resolution we provide today would collapse into an uncertain and fact-bound inquiry, soon to be followed by a landslide of "good faith" claims against the FDIC....

*Bowen*, 915 F.2d at 1016–17. By not recording the alleged misrepresentations in the note, plaintiffs participated in an arrangement likely to mislead the FDIC and its transferees. For this reason, the plaintiffs were not "clearly innocent" parties as found in the case of *Federal Deposit Ins. Corp. v. Meo*, 505 F.2d 790 (9th Cir.1974). See *Adams*, 746 F.Supp. at 427–28; *Castleglen, Inc. v. Commonwealth Sav. Ass'n*, 728 F.Supp. 656, 669 (D.Utah 1989). Plaintiffs were in a position to insure that the misrepresentations they believed were important enough to rely upon were also recorded in the loan documents. The risk and cost from such practices must be borne by the borrowers. In other words, the results of *D'Oench* under these circumstances, though perceived as inequitable by the borrower, must be blamed in some part on the borrower who failed to have the oral inducements memorialized in writing.[3] Plaintiff's claims and affirmative defenses

of fraudulent inducement are within the established scope of the *D'Oench* doctrine.

### Overstatement of Bank's Assets

■ Plaintiffs' final argued distinction is that their note did not result in an overstatement of Sylvia State Bank's assets. Plaintiffs do not claim the note was always without value or was made only to perpetrate a fraud on banking authorities. Like their other arguments, this one has also recently failed to persuade courts to refrain from imposing the *D'Oench* doctrine.

As stated before, it is irrelevant whether plaintiffs knew or intended that their secret agreement or condition would deceive bank examiners. See *Federal Deposit Ins. Corp. v. Van Laanen*, 769 F.2d 666, 667 (10th Cir.1985). Obviously, the plaintiffs' successful assertion of a claim or defense based upon a secret agreement or condition would tend to diminish the value of an otherwise valid note that had been held by the FDIC and now was held by TSB as transferee. *Porras*, 903 F.2d at 381; *Bell & Murphy & Assoc.*, 894 F.2d at 753; *Adams*, 746 F.Supp. at 426–27. Thus, neither of plaintiffs' arguments prevent the application of *D'Oench*.

TSB has properly availed itself of the broad and encompassing protections currently afforded by the *D'Oench* doctrine. Plaintiff's claims and defenses against TSB based on the fraudulent representations of Gary Walker are barred by the doctrine. Without these claims and defenses, the plaintiffs are unable to prevent the court from granting TSB's motion for summary judgment for the principal of $62,139.83 plus interest at the rate of 11% per annum from and after May 9, 1988, on plaintiffs' note. The FDIC is also entitled to have its motion to dismiss TSB's amended third-party complaint granted since plaintiff is without a claim or defense to the promissory note.

---

**3.** As to the balance of these equities, the Supreme Court has said:

> Even if we had the power to do, the equities petitioners invoke are not the equities the statute regards as predominant. While the borrower who has relied upon an erroneous or even fraudulent unrecorded representation

> has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute.

*Langley*, 484 U.S. at 94, 108 S.Ct. at 403.

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Dk. 7) is denied;

IT IS FURTHER ORDERED that FDIC's motion to dismiss and/or strike (Dk. 15, 20, 21) the amended third-party petition of TSB is granted;

IT IS FURTHER ORDERED that TSB's motion for summary judgment (Dk. 39) is granted.