**RAYTHEON AIRCRAFT CREDIT CORPORATION, Plaintiff,**

v.

**PAL AIR INTERNATIONAL, INC.; Pace Aviation, Ltd.; Robert G. Bendall; and Ontario Express, Ltd., Defendants and Third Party Plaintiffs,**

v.

**James A. PORTER and Samoa Aviation, Inc., Third Party Defendants.**

No. 95–1437–JTM.

United States District Court,
D. Kansas.

April 17, 1996.

Jeff. C. Spahn, Jr., and Roger E. McClellan, of Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for plaintiff.

Edward A. McConwell, of McConwell Law Offices, Overland Park, KS, for Pal Air International, Pace Aviation and Robert Bendall.

Kenneth P. Leyba, of Curfman, Harris, Rose, Weltz, Metzger & Smith, Wichita, KS, for Ontario Express.

Robert A. Dennison, III, Austin, TX; and Scott J. Gunderson, of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for James A. Porter and Samoa Aviation.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

In the present action, plaintiff Raytheon Aircraft Credit Corporation, successor to Beech Acceptance Corporation, seeks to recover on a promissory note executed by defendant Pal Air Aviation, Inc. of Nevada. The September 5, 1990 note in the amount of $1 million was executed to finance Pal Air's purchase of two Beechcraft King Air airplanes. As security for the note, Raytheon retained a security interest in the airplanes. Raytheon contends defendant Pal Air defaulted in its required payments under the promissory note, and Raytheon seeks recovery against Pal Air and two guarantors of the note, Pal Air's sister company, Pace Aviation Limited, and Robert Bendall, the sole shareholder and officer of both Pal Air and Pace. Bendall currently resides in Nevada.

In its first amended complaint filed December 6, 1995, Raytheon added Ontario Ex-

press, Ltd. as a defendant. Ontario Express allegedly executed a $125,000.00 guarantee of the promissory note. Raytheon seeks judgments against Ontario Express in the amount of $125,000.00 and against the remaining Nevada defendants in the amount of $615,915.58.

On November 20, the Nevada defendants filed a cross-claim against Samoa Aviation, Inc. and its president, James Porter. Samoa Aviation is organized and doing business under the laws of the Territory of American Samoa, and Porter is domiciled in American Samoa. The Nevada defendants contend that in 1990 Porter asked Bendall to acquire two King Air aircraft currently located in Canada, with financing from Beechcraft, and to have them recertified for United States registration.

There are currently three motions to dismiss before the court, one by Ontario Express and two by the Samoan cross-claiming defendants. Ontario Express seeks dismissal because it contends Raytheon and Pal Air improperly modified the underlying obligation without its consent. The Samoan defendants have two motions before the court. The first contends the action against them should be dismissed since they were brought into the action as cross-claimants, rather than as the result of a third party action. Their second motion seeks dismissal on the grounds of (1) lack of jurisdiction, (2) inconvenient forum, (3) failure of the Nevada parties to raise similar arguments as counterclaims in the Samoan litigation, (4) improper removal, (5) prematurity, and (6) abstention. The court has received and reviewed all submissions by the parties, including the plaintiff's supplemental memorandum of March 28, 1996. On April 1, 1996, the court heard oral argument relating to the various dispositive motions pending before the court. For the reasons stated herein, these motions will be denied.

The present action revolves around two agreements executed on September 5, 1990. In the first, Pal Air and Samoa Aviation entered into an aircraft lease agreement for one of these aircraft (N710AS S/N 197). The lease agreement was signed by Bendall and Porter as presidents of the lessor and lessee.

The lease agreement provided that "any dispute shall be ligated [sic] in the courts of the State of Nevada." (Defs.' Memo., Ex. 1 at ¶ 23.)

On the same date, Pal Air completed a Beech Acceptance Corporation promissory note in the amount of $1 million. The note is secured by a security interest in two Beechcraft A–100 airplanes, Serial Nos. N712AS and N710AS. The note is guaranteed by Bendall, Pace, and Samoa Aviation. Paragraph 13 of the note provides that "ANY LEGAL PROCEEDING BASED UPON THE PROVISIONS OF THIS AGREEMENT SHALL BE BROUGHT EXCLUSIVELY" in a state or federal court located in Wichita, Kansas. (Defs.' Memo., Ex. 2.) Bendall, Pal Air and Pace contend Pal Air refused to accept delivery of the other aircraft (N712AS S/N 198), and as a result they have been subjected to the deficiency action by Raytheon/Beechcraft on the $1 million promissory note.

On April 28, 1995, Samoa Aviation kicked off the geographically dispersed litigation arising from the airplane lease agreement by commencing an action in the High Court of American Samoa (Trial Division) against Bendall, Pal Air and Pace, seeking a determination of the parties' rights to two DeHavilland Twin Otter aircraft and one Beechcraft King Air aircraft. *Samoa Aviation v. Bendall,* Case No. 50–95. On June 13, 1995, the Samoan court granted a preliminary injunction in favor of the plaintiff, restraining Bendall, Pal Air, or Pace from selling, encumbering, or taking possession of the aircraft. The court also appointed a trustee, who has taken custody of title to the aircraft.

Bendall, Pal Air and Pace filed their answer in the Samoan action on June 30, 1995. Shortly afterwards, on July 14, Pal Air sued Samoa Aviation, along with James Porter and his wife Constance, in Samoa. *Pal Air Internat'l v. Porter,* Case No. 70–95. The Samoan court later consolidated this case with the previous injunction action, Case No. 50–95.

On November 12, 1995, Bendall, Pal Air and Pace sued Samoa Aviation, James Porter and Constance Porter in the United States

District Court for the District of Nevada, *Pal Air Internat'l v. Samoa Aviation*, Case No. CV–N–95–00679–HDM.

### 1. *Motion to Dismiss of Ontario Express*

▇▇▇ The motion to dismiss of defendant Ontario Express is premised on the general rule under Kansas law limiting a guarantor's liability when there has been a material change in the underlying obligation without the guarantor's consent. *First National Bank of Anthony v. Dunning*, 18 Kan.App.2d 518, 520, 855 P.2d 493 (1993). In the present case, Beechcraft, Raytheon's predecessor, entered into agreements with Pal Air on October 12, 1992 and September 29, 1994, extending the time for Pal Air to meet its obligations on the promissory note.

▇▇▇ The court finds the motion to dismiss should be denied. The general rule cited by Ontario Express does not apply where the guarantee agreement itself permits modification of the underlying obligation. *Hill Petroleum v. Pathmark Internat'l*, 759 F.Supp 722, 725 (D.Kan.1991). In the present case, ¶ 3.10 of the guarantee agreement does provide that Ontario Express will be liable on the note "as the same may be amended, modified or supplemented with the consent" of Ontario Express and Beech Acceptance. But the agreement, read as a whole, does not establish that failure to obtain written consent nullifies the guarantee. (Plaintiff's First Amended Complaint, Ex. D.)

This is because other language in the agreement indicates that Ontario Express agreed to waive any defense based on independent amendment of the agreement. Thus, Ontario explicitly waives "any and all defenses available to guarantors, sureties, and other secondary parties at law or in equity." ¶ 2(e). More importantly, the agreement expressly provides that the liability of Ontario Express will continue "irrespective of . . . any deferral of payment." ¶ 2(c)(v). The Court finds that the guarantee obligation was intended to survive modification, and the motion to dismiss must be denied.

Moreover, there is some evidence that Ontario Express in any event did consent to the time extensions, as reflected in a letter of October 23, 1992 from Canadian Regional Airlines (the owner of Ontario Express) to Bendall. (Pltf.'s Resp., Ex. A.) Ontario Express responds by contending that with regard to motions to dismiss under Rule 12(b)(6), the court is prevented from considering matters beyond the pleadings, and cites the statement in *Adams v. Walker*, 767 F.Supp. 1099, 1103 (D.Kan.1991) (citing *Hal Roach Studios v. Richard Feiner & Co.*, 883 F.2d 1429, 1441 n. 18 (9th Cir.), *amended and superseded*, 896 F.2d 1542 (9th Cir. 1989)), that the court in resolving such a motion should not consider evidence "beyond the pleadings unless it is submitted or attached as part of the complaint."

▇▇▇ Ontario Express misreads the law. Decisions such as *Adams* and *Hal Roach* properly provide that a court should not consider matters beyond the pleadings as a basis for *granting* a dispositive motion under Rule 12(b)(6). The party opposing the motion is not so limited, and the motion should be granted "only if it appears beyond a reasonable doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Adams*, 767 F.Supp. at 1103 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Here, it cannot be said beyond a reasonable doubt that Raytheon will not be able to prove Ontario Express consented to the extensions. Accordingly, the motion to dismiss will be denied.

### 2. *Improper Action*

▇▇▇ The Samoan parties seek dismissal because the action which brought them into the case is denominated as a "cross-claim," although they were not previously parties to the action. Rule 13(g) provides for a cross-claim "by one party against a co-party." Bendall, Pal Air and Pace essentially concede that the action against the Samoan parties is misnamed.

The court has been unable to find any authority, however, to conclude the necessary sanction for misnaming the action against an additional party is dismissal. And, as defendants argue, the action could be considered properly filed under either Rule 13(h), which

provides for cross-claims against persons not already parties if done "in accordance with the provisions of Rules 19 and 20," which deal with the joinder of additional parties, or Rule 14 as a third party complaint.

Rule 13(h) has been construed liberally, and it has been held that a party may bring a 13(h) counterclaim or cross-claim joining an additional party without seeking leave of the court. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, Civil 2d § 1435, at 268–270 (1995). However, the rule does require a contemporaneous motion to join under Rule 19 or Rule 20.

"Rule 13(h) only authorizes the court to join additional persons in order to adjudicate a counterclaim or cross-claim that already is before the court or one that is being asserted at the same time the addition of a nonparty is sought. This means that a counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party." *Id.* § 1435 at 270–71. Here, defendants filed their answer and simultaneous cross-claim on November 28, 1995. At no time have defendants moved to join additional defendants under Rule 19 or 20.

On the other hand, Rule 14(a) provides for third party actions by a defendant against nonparties without prior leave of the court, if the action is brought within 10 days of the defendant's answer. This requirement was met here, where both answer and "cross-claim" were made in the same pleading. Thus, as stated in the hearing on the present matter, the court will treat the pleading bringing the Samoan parties into the action as a third party petition, and the caption of the case will reflect this designation.[1]

### 3. *Personal Jurisdiction*

The Samoan defendants seek dismissal of the action against Porter individually on the ground of a lack of personal jurisdiction. When jurisdiction is challenged prior to trial, the party bringing the claim bears the burden of providing a prima facie showing that the exercise of jurisdiction is proper. *Phillips USA, Inc. v. Allflex USA, Inc.*, 857 F.Supp 789, 791 (D.Kan.1994). When the defendant both challenges jurisdiction and provides evidence in support of his argument, the party bringing the claim must come forward with competent proof supporting jurisdiction. *Pytlik v. Professional Resources*, 887 F.2d 1371, 1376 (10th Cir.1989). A plaintiff or other party bringing a claim must establish that personal jurisdiction is consistent both with the due process clause of the Fourteenth Amendment and with the particular provisions of the forum state's jurisdictional statutes. *Equifax Services v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990). Because the Kansas long-arm statute is construed to the maximum extent permissible consistent with due process, *Volt Delta Resources v. Devine*, 241 Kan. 775, 777, 740 P.2d 1089 (1987), the analysis under both inquiries is largely the same.

To satisfy due process, it must first be shown that the person subject to the claim had sufficient minimum contacts with the forum state so that exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Next, the person subject to the claim must have purposefully availed himself of the benefits of conducting business in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Finally, the quality and nature of these contacts must be such that it is reasonable to require the person to appear in the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528.

Jurisdiction over the individual officers of a corporation cannot be obtained merely by accomplishing jurisdiction over the corporation. *Ten Mile Indus. Park v. Western Plains Service*, 810 F.2d 1518, 1527 (10th

---

1. Throughout the balance of this memorandum and order, the Samoan parties will be referred to as "third party defendants."

Cir.1987); *Wegerer v. First Commodity Corp.*, 744 F.2d 719, 727 (10th Cir.1984); *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277, 1281–82 (10th Cir.1969). Thus, jurisdiction over a corporate officer cannot be predicated only on actions undertaken as an officer or employee of the corporation, but must be based on his or her own personal contacts with the forum state. *National Petroleum Marketing v. Phoenix Fuel*, 902 F.Supp. 1459 (D.Utah.1995); *Key Industr. v. O'Doski, Sellers & Clark, Inc.*, 872 F.Supp. 858 (D.Kan.1994).

An exception to the general corporate shield rule exists, however, " 'if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals.' " *Ten Mile Indus. Park*, 810 F.2d at 1527 (quoting 4 Wright, Miller & Kane *Federal Practice and Procedure*, § 1069 at 69 (1985 Supp.)). *See Murray v. Sevier*, 156 F.R.D. 235 (D.Kan.1994) (exception applies where individual has used corporate entity to promote injustice or fraud); *Meredith v. Health Care Products, Inc.*, 777 F.Supp. 923, 926 (D.Wyo.1991) (jurisdiction appropriate where individual defendants were sole owners of corporation transacting business in the forum, when individual defendants allegedly converted assets of corporation, which served as "a mere shell to defraud creditors.").

Porter here contends that he has not transacted any business in Kansas on an individual basis since 1970, and has not in his individual capacity made any contracts or committed any tortious acts in Kansas. The Nevada defendants' reply does not put forward any argument that Samoa Aviation is a shell for Porter. They contend first that Porter signed the promissory note, which specifies that disputes arising from the note should be litigated in Kansas, in his own capacity, and second, that Porter had other communications with Kansas parties relating to the subsequent seizure and sale of one of the airplanes.

The court finds that Porter's argument should be rejected. As indicated by the Nevada defendants in the hearing on the present matter, there are outstanding factual issues as to Porter's transactions within Kansas. In addition, Porter explicitly signed the guarantee portion of the Beech Acceptance promissory note, with the words "GUARANTOR, PRIMARY OBLIGOR," printed underneath the signature line.

Porter, of course, stresses the printed word "By:" and that above the signature line appear the words "SAMOA AIR." Nonetheless, there is no explicit statement that Porter is signing as a corporate officer, nor is any corporate title listed in connection with Porter's signature. Given the present status of the case and the absence of significant discovery, the court will deny third party defendant Porter's motion to dismiss at this time.

### 4. Abstention

Porter and Samoa Aviation also contend the court should abstain from hearing the cross-claims in light of the existing litigation in Samoa. This argument is premised on the Supreme Court's decision in *Colorado River Water Conserv'n Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The goal of the doctrine is "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes first assuming jurisdiction." *Penn Gen. Cas. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935).

In *Colorado River*, the Court found none of the existing forms of abstention applicable, but concluded that abstention may nonetheless be appropriate in the case before it. The Court identified four factors relevant to this form of abstention, including whether the federal and state litigation involve claims to the same property or *res*, inconvenience of the second forum, the desirability of avoiding piecemeal litigation, and the order in which the actions were brought. 424 U.S. at 818, 96 S.Ct. at 1246–47. The Court emphasized that none of these factors was dispositive, and that in a given case account must be taken of both "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them ... and the combination of factors counseling against that exer-

cise." *Id.* at 817–18, 96 S.Ct. at 1246. The Court concluded its summary of these factors by stating that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247. The district court's dismissal of the federal action in *Colorado River* was upheld by the Supreme Court. The federal litigation had been brought by the government to determine water rights in the Colorado River. In upholding extension, the court noted that the government had indicated a previous willingness to litigate similar matters in state courts, geographical inconvenience of the federal forum, a lack of substantial progress in the federal action, and the presence of numerous issues of state law. The critical factor for the Court's decision, however, was the strong federal policy of "avoid[ing] piecemeal adjudication of water rights in a river system." *Id.,* at 819, 96 S.Ct. at 1247.

The restrictive view of the *Colorado River* abstention was restated in *Moses H. Cone Mem. Hosp. v. Mercury Construction,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983), where the Court stated that proper application of the *Colorado River* abstention depends not upon "a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."

The parties here weigh the *Colorado River* factors in different ways. This court finds that dismissal is not appropriate under the circumstances. Although the parties dispute whether this should be considered an *in rem* or an *in personam* action, it does seem clear that the counterclaims advanced here do not depend upon having jurisdiction over the airplanes in Samoa. The defendants advance claims for contribution, fraud, and breach of contract. None of these claims is dependent on the presence or ownership of airplanes. The present litigation is not significantly advanced, but it is not clear that the litigation in either Samoa or Nevada is near completion. Moreover, given the geographic dispersal of the parties and the competing forums, the court finds that convenience does not support resolution of this action outside of Kansas.

The Samoan litigation was filed first, and courts should seek to avoid the existence of piecemeal litigation. But these considerations, especially the latter, will be present in virtually every case of concurrent state and federal proceedings. Yet the Supreme Court has indicated clearly that abstention is a rare event, " 'an extraordinary and narrow exception to the duty of a District court to adjudicate a controversy properly before it.' " *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 (quoting *Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). Certainly Porter and Samoa Aviation have not identified anything like the particularized, strong federal policy against piecemeal water rights litigation which supported abstention in *Colorado River.* The court therefore finds that dismissal of the present action cannot be grounded on the doctrine of abstention.

### 5. Forum Non Conveniens

The burden is on the Samoan third party defendants to show the need for *forum non conveniens* transfer. *Rivendell Forest Products v. Canadian Pacific Ltd.,* 2 F.3d 990 (10th Cir.1993). The plaintiff's choice of forum should be rarely disturbed, and the party seeking transfer must show that the balance of interests strongly supports a different forum. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Dismissal is appropriate only under rare circumstances, as when trial of the matter would result in "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

The Samoan third party defendants contend that Samoa is the more convenient forum. Indeed, the airplanes are there, but as noted earlier, the planes themselves are not directly relevant to the third party claims for fraud, contribution, and breach of lease agreement, which do not depend upon the airplanes but upon the actions and agreements between the parties. The only person residing in Samoa who has been identified as a significant witness is Porter himself.

Bendall, Pal Air and Pace contend that a trial in Kansas in also appropriate because of the forum selection clause in the promissory note. The Samoans argue that the promissory note language is irrelevant, since it applies by its terms only to proceedings "BASED UPON THE PROVISIONS OF THIS AGREEMENT." (Defs.' Memo., Ex. 2 at ¶ 13.) Since the third party claims are premised not on the provisions in the note but upon general claims for contribution, fraud, and breach of the lease agreement (which has a forum selection clause for Nevada), the court finds that the forum selection clause by itself does not support keeping the third party claims in Kansas. However, as noted earlier, the court finds that Porter and Samoa Aviation have failed to meet the heavy burden of showing that the selection of Kansas should be disregarded.

### 6. Compulsory Counterclaims

■ Porter and Samoa Aviation next argue that the third party claims against them should be dismissed since the Nevada parties did not assert them as compulsory counterclaims under Rule 13(a) in the first Samoan litigation. The failure to assert a compulsory counterclaim bars a party from instituting a subsequent independent action on that claim. *Baker v. Gold Seal Liquors,* 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). Fed. R.Civ.P. 13(a) provides that:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Bendall, Pal Air and Pace advance three reasons why their third party claims here should not be barred. First, they contend that the claims advanced here are not compulsory counterclaims since they do not arise out of the same transaction or occurrence. Second, they contend that the claims are not compulsory counterclaims because the Samoan court would not have jurisdiction over parties such as Beech Acceptance, Ontario

Express, and Bendall. Finally, they contend that even if the claims are compulsory counterclaims, there is no preclusive effect until a judgment is rendered in the Samoan action.

■ The first argument should be rejected, since both the complaint in the Samoan litigation and the present third party claims touch upon the same transaction or occurrence. In this context, the phrase "transaction or occurrence" has been broadly construed, and has been held to include events which have a logical relationship. *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). Although, as Bendall, Pal Air and Pace point out, the complaint filed by Samoa Aviation in Samoa largely focuses on the Twin Otter aircraft, the complaint nonetheless expressly discusses the Beech King Air A710AS, and contends specifically that Bendall, Pace, and Pal Air breached their obligation on "[t]his underlying agreement involv[ing] the Defendants['] acquisition of two KingAir [sic] aircraft." (Third Party Defs.' Memo., Ex. 1 at 4.) The complaint specifically seeks money damages of $300,000.00 for loss of equity in the N710AS aircraft. (Id., at 8). Samoa Aviation's action premised at least in part on the same transaction or occurrence underlying the third party claims here.

■ Bendall, Pal Air and Pace are partially correct in their second argument, at least as to their contribution claim. Rule 13(a) excludes from its operation claims which are not yet mature. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* Civil 2d, § 1411 at 80 (1990). Here, the contribution claim seeks a determination that Porter and Samoa Aviation should "indemnify, reimburse, and hold Defendants harmless from any and all responsibility and costs incurred as a result of the promissory note held by [Raytheon]." (Defs.' Answer at 9.) Thus, this claim is not mature until Raytheon succeeds in obtaining a judgment against Bendall, Pal Air and Pace. Their failure to raise the issue in the Samoan litigation is therefore not a bar to raising that claim here.

■ The same result would not apply, however, to the fraud and breach of lease agreement claims. Neither of these claims is

directly tied to, or contingent upon, Raytheon's action against Bendall, Pal Air and Pace. As such, there is no reason why these claims could not have been advanced as compulsory counterclaims in the Samoan litigation.

However, the court finds that the failure to raise these claims in Samoa does not bar their advancement here because the Samoan litigation is ongoing. In their reply, Porter and Samoa Aviation cite several cases holding that compulsory counterclaims may be barred under a waiver or estoppel theory, as well as a theory founded on *res judicata.* *Kane v. Magna Mixer Co.,* 71 F.3d 555 (6th Cir.1995); *Local Union No. 11 v. G.P. Thompson Electric,* 363 F.2d 181 (9th Cir. 1966).

Courts following the waiver or estoppel theory are in the minority; the majority has spoken on the issue as arising from res judicata. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* Civil 2d, § 1417 at 131 (1990). More importantly, the distinction between cases following a waiver or estoppel theory and those following a *res judicata* theory is relevant only where the prior action has reached some definitive conclusion. Application of the waiver or estoppel theory thus produces a different result where the prior action has been terminated by settlement instead of proceeding to a formal judgment. This is because those courts which have adopted the waiver or estoppel theory have done so as a means of relieving the party who omitted the counterclaim from the harsh effect of the bar in cases "resulting in a default judgment, a consent judgment, or a dismissal after a compromise agreement." *Id.,* at 134. But here the distinction is academic, since the actions in Samoa have not been terminated and remain in issue.

The court has not located any case applying the bar against omitted counterclaims when the earlier action is still ongoing. This appears natural, since under Rule 13(e) a party who has failed to plead a counterclaim may obtain leave to subsequently advance that counterclaim when the interests of justice require. Since the Samoan litigation has not proceeded to any form of final resolution, the bar on omitted counterclaims, premised on whatever theory, does not apply.

### 7. Illegitimate Effort to Remove

Porter and Samoa Aviation next argue that the case should be dismissed as an example of an illegitimate attempt to remove a state action. The case they rely upon, however, *In re Pacific Enterprises Securities Litig.,* 47 F.3d 373 (9th Cir.1995), does not support their argument. The Ninth Circuit in *Pacific Enterprises* merely restates, in the context of a case involving a shareholder derivative suit, the general condemnation of attempts to circumvent the removal statute, 28 U.S.C. § 1441. Porter and Samoa Aviation do not bother to explain how the removal statute was circumvented here. There is no indication that, had Raytheon originally brought this action in state court, the defendants could not have properly removed it here.

### 8. Contribution

Finally, Porter and Samoa Aviation contend the claim for contribution under K.S.A. 60–2413(a) should be dismissed since the cause of action under the statute only arises when the claimant pays more than his share. *Cipra v. Seeger,* 215 Kan. 951, 953, 529 P.2d 130, 133 (1974). The court in *Cipra* concluded that since the plaintiff had not "paid the judgment, his cause of action had not accrued when the petition was filed." 215 Kan. at 953, 529 P.2d 130.

K.S.A. 60–2413(a) permits parties to advance claims for contribution:

> Persons jointly liable to another in contract are entitled to contribution among themselves as heretofore recognized by principles of equity. Such right of contribution may be asserted in separate actions or by way of cross-claim, interpleader, or intervention under the provisions of article 2.

Here, the defendants have alleged that owing to the actions of Porter and Samoa Aviation, they have already incurred losses in excess of what they would otherwise owe under the agreements between the parties. The court finds that this allegation satisfies the requirement in *Cipra* that con-

tribution requires a mature claim, and will allow defendants to proceed with their contribution claim under K.S.A. 60–2413(a).

IT IS ACCORDINGLY ORDERED this 16th day of April, 1996, that the plaintiff's motion to supplement its memorandum (Dkt. No. 43) is granted; the motions to dismiss of Ontario Express (Dkt. No. 23) and of third party defendants (Dkt. Nos. 16 and 27) are hereby denied. Ontario Express shall have 30 days from the date this order is entered to seek relief by appeal.